[Cite as *State v. Chafin*, 2020-Ohio-3983.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
GREENE COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-69 |
| | : | |
| v. | : | Trial Court Case No. 2018-CR-867 |
| | : | |
| DANIEL K. CHAFIN | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 7th day of August, 2020.

. . . . . . . . . . .

MARCY A. VONDERWELL, Atty. Reg. No. 0078311, Assistant Prosecuting Attorney, Greene County Prosecutor's Office, 61 Greene Street, Suite 200, Xenia, Ohio 45385
      Attorney for Plaintiff-Appellee

ADAM J. ARNOLD, Atty. Reg. No. 0088797, 120 West Second Street, Suite 1717, Dayton, Ohio 45402
      Attorney for Defendant-Appellant

. . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Daniel K. Chafin, appeals from his conviction of burglary, attempted safecracking, and theft. Following a jury verdict finding Daniel[1] guilty of all three offenses, the court sentenced him to concurrent terms on each charge, for a total of five years in prison.

{¶ 2} According to Daniel, his burglary conviction should be reversed because the record lacks sufficient evidence that he had the purpose to commit an offense once he entered the home where the alleged burglary occurred. In addition, Daniel argues that trial counsel provided ineffective assistance by failing to ask for a lesser included instruction involving R.C. 2911.12(B). A conviction on the lesser included offense would have reduced the burglary charge to a fourth-degree felony rather than a second-degree felony.

{¶ 3} After considering the record and applicable law, we conclude that the record does contain sufficient evidence to support the burglary conviction, because the jury could have reasonably concluded that Daniel entered his brother's home with intent to commit theft. Furthermore, Daniel's counsel did request an instruction on the lesser included offense, but the trial court rejected his request. Although the court erred in its reasons for rejecting the instructions, trial counsel was not responsible for the court's error. Morevoer, the instructions were not warranted under the facts presented, and the error, therefore, did not impact the judgment. Accordingly, the judgment of the trial court will be affirmed.

---

[1] Because Daniel and the victims are siblings, we will use first names when referring to Daniel and his family members.

## I. Facts and Course of Proceedings

**{¶ 4}** The victims in the case before us are Daniel's siblings. Daniel's brother, Joseph, is about ten years younger than Daniel, and owns a house in Fairborn that he purchased in 2016. For about a year after the purchase, Daniel stayed at the house. However, Joseph kicked Daniel out in 2017 when he suspected Daniel of stealing some power tools.[2] Subsequently, Joseph's younger brother, Donte, came to live with Joseph. Joseph also gained legal custody of his two younger sisters, ages 13 and 15, in February 2018. Thus, when the alleged crimes occurred on September 6, 2018, Joseph and his three younger siblings lived together in the house.

**{¶ 5}** When Joseph kicked Daniel out, he told Daniel that he was not allowed in the house. Joseph also changed all the locks. The only person other than Joseph who had a key was one of the sisters, who arrived home from school while Joseph was at work. Daniel was never given a key to the house.

**{¶ 6}** After Daniel was kicked out, he came to the house a few times with their mother to get jugs of water, as her water was bad and she did not have a filter. When she brought Daniel, Joseph told her that he did not want Daniel there. However, she claimed she needed Daniel to help carry the jugs.

**{¶ 7}** Daniel also came over four or five times to try to sell Joseph things. Almost every time, Joseph told him that he was not welcome. The last time Daniel came over prior to the alleged burglary, Joseph swung a shovel at Daniel and hit him. He told Daniel not to come back and to leave Joseph and his family alone.

**{¶ 8}** During the week, Joseph worked at a data processing job from 7:30 a.m. to

---

[2] According to the record, Daniel had drug problems.

4:30 p.m.   In contrast, Donte, who was 20 years old, worked third shift at a print shop. On September 6, 2018 (which was a weekday), Joseph was at work, the girls were at school, and Donte was home, sleeping.   Around 10:00 a.m., Donte woke up and went to the restroom.   Donte saw something from the corner of his eye, but thought it was just his imagination because he was tired.   Donte then walked toward the kitchen and saw Daniel standing in the kitchen, looking surprised. Donte asked Daniel what he was doing there because Joseph did not want him there. Daniel did not have a response to that question and tried to avoid it. Daniel dodged Donte's questions, trying to make small talk.

{¶ 9} Daniel stayed for about an hour and a half.   During that time, Daniel walked around the house and Donte followed him to make sure he did not take anything. Several times, Daniel stopped by a safe located on a counter next to the kitchen window and forcefully tried to open the safe with a screwdriver.   The safe contained a gun and money.   Daniel did not directly say what he was doing, but he said, "You know why I'm here," and "You know I was about to do something bad; right?"   Transcript of Trial Proceedings ("Tr."), Vol. I, p. 130.   Donte took this to mean that Daniel was about to steal something, like what he was trying to do with the safe.   *Id.*

{¶ 10} The framing on the kitchen window had been pushed in.   The window was shut, but the frame had been pushed in and there was enough room that a person could enter the house.   *Id.* at p. 160.   There was no such damage to the window before that day.

{¶ 11} From time to time, Daniel had asked Donte for money.   Donte had given Daniel money once before ($40), but he did not give him money on September 6, 2018. Donte did not call the police that day because his phone was not charged.   At some

point, Donte followed Daniel into the living room. Daniel sat down, and Donte turned on a computer and began playing a game. Donte continued to play the game until Daniel got back up again and then Donte followed Daniel as he had before. After a while, Donte got frustrated because Daniel would not listen. At that point, he told Daniel that if he did not leave, he would call the police. Daniel then left, going through the garage and jumping over the privacy fence in the backyard.

{¶ 12} After Daniel left, Donte looked over everything to make sure things were there and noticed that his debit card was missing. He knew that Daniel had taken it because Daniel was the only one who had been there. When he realized the card was missing, he found a charger for his phone and called Daniel's mother's phone, which Daniel had been using. Daniel responded and said, "Don't call the cops. I'm bringing it right back." Tr., Vol. I at p. 138.

{¶ 13} A screenshot was taken of Daniel's text, which said, "Yes, I'm coming back. Don't call the f**king police. Can't believe you would threaten that anyway." *Id.* at 143. The text was received at 12:21 p.m. *Id.* Daniel then brought the card back within an hour. Donte did not call the police because he was kind of scared to call the police on his brother.

{¶ 14} When Joseph arrived home from work that day, he saw that the window frame in the kitchen had been pushed in. It had not previously been pushed in that way. Joseph helped Donte take screenshots of Donte's phone, including the text and call history, and the police were called.

{¶ 15} Fairborn Police Officer Christopher Sopher came to the house that night on a report of a past-occurred burglary. Sopher spoke in detail with Donte, who had called

in the report, and obtained a witness statement. He was not able to get inside the house because of the dog. Sopher asked Donte if he could put the dog away so he could go in and investigate. However, Donte was concerned that the dog would be able to get out and cause harm, so Sopher did not enter the house.

{¶ 16} Sopher's report was referred to the detective section, and Detective McGuire went to the house several times, but was not able to get in due to the dog. McGuire spoke to Donte, Joseph, and Daniel. According to McGuire, Daniel claimed that he had not been kicked out of the house and was allowed to be there. When McGuire asked Daniel if there was a dispute over some missing property, Daniel said that Donte was alleging that he took $40, that they were in a dispute over $40 that Daniel had received from Donte, and that Donte was just trying to get him in trouble regarding the $40.

{¶ 17} Joseph had three surveillance cameras outside his house. One camera was above the garage door; one was at the front door, and one was on the side of the house. There was no camera in the back of the house, because of the privacy fence. Daniel knew where the cameras were. After the incident, Joseph reviewed the video footage; the videos revealed nothing other than Daniel's approaching the house around 1:01 p.m. (which was within an hour after the phone call and text). Tr., Vol. I at p. 228.

{¶ 18} Detective McGuire sent the case to the prosecutor for review, and an indictment was filed on November 2, 2018, for burglary, a second-degree felony, safecracking, a fifth-degree felony, and theft, a fifth-degree felony. After Daniel pled not guilty, the case was tried to a jury, which found Daniel guilty of burglary, attempted safe-cracking, and theft. The court then sentenced Daniel to a total of five years in prison on

the charges, and this appeal followed.


## II.   Sufficiency of the Evidence

**{¶ 19}** Daniel's First Assignment of Error states that:

The Defendant-Appellant Was Convicted Without Sufficient Evidence as to an Essential Element of the Crime Convicted.

**{¶ 20}** Under this assignment of error, Daniel contends that the record lacked sufficient evidence to support the burglary conviction, because there was no evidence that he had the purpose to commit an offense when he entered Joseph's home.   Daniel admits that he wrongfully entered the house, but argues that his purpose in entering was not to take Donte's credit card or break into the safe; instead, his purpose was simply to be in the home.   As evidence, he points to the fact that he was there for an hour and a half, that he and Donte spoke frequently, that he and Donte sat down to play video games, that Donte did not feel threatened, and that Donte did not call the police.

**{¶ 21}** "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   In this situation, we apply the following test:

An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable

doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).

{¶ 22} Daniel was charged with having violated R.C. 2911.12(A)(1), which provides that:

(A) No person, by force, stealth, or deception, shall do any of the following:

(1) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, when another person other than an accomplice of the offender is present, with purpose to commit in the structure or in the separately secured or separately occupied portion of the structure any criminal offense[.]

{¶ 23} The culpable mental state for this violation is "purpose to commit * * * any criminal offense." In terms of culpability, "[a] person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to engage in conduct of that nature." R.C. 2901.22(A). To decide if an individual had the required mental state, courts look to the totality of the circumstances surrounding an incident. *State v. Johnson*, 56 Ohio St.2d 35, 38, 381 N.E.2d 637 (1978).

{¶ 24} Furthermore, intent may be proven by circumstantial evidence. "The intent of an accused person dwells in his mind. Not being ascertainable by the exercise of any or all of the senses, it can never be proved by the direct testimony of a third person, and it need not be. It must be gathered from the surrounding facts and circumstances under proper instructions from the court." *State v. Huffman*, 131 Ohio St. 27, 28, 1 N.E.2d 313 (1936), paragraph four of the syllabus. *Accord State v. Trammell*, 2013-Ohio-4615, 3 N.E.3d 260, ¶ 93 (2d Dist.).

{¶ 25} The predicate offense for the burglary charge was theft. There can be little doubt that Daniel's intent in entering the house was to steal something. The record lacks any evidence that Daniel knocked on the front door and asked to come in, as any normal visitor (relative or not) would. Instead, the evidence indicated that Daniel had been previously barred from the premises based on the owner's suspicion that he had stolen property. Instead of asking for permission, Daniel came through the back yard (where he knew there were no cameras) and entered through a kitchen window, which he damaged in the process.

{¶ 26} Moreover, unlike many situations, we have Daniel's own words expressing his intent. As noted, Daniel told his brother, Donte, that "You know why I'm here," and that, "You know I was about to do something bad; right?" Tr., Vol. I at p. 130.

{¶ 27} As support for his position that he was just at the house to be there, Daniel has cited *State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205 (2d Dist.). In that case, the defendant was arrested after he was found asleep on the victim's couch. He was charged with a violation of R.C. 2911.12(A)(2), based on his alleged "intent to possess and use illegal drugs while inside." *Id.* at ¶ 23. We disagreed, finding a lack of evidence

that the defendant was doing anything other than sleeping, even though he possessed crack pipes. *Id.* at ¶ 25.

**{¶ 28}** *Hudson* is not on point here. Unlike the defendant in *Hudson*, Daniel, himself, highlighted his intent to steal something when he entered the premises.

**{¶ 29}** Furthermore, Daniel's argument that the evidence was insufficient because he did not form an intent to steal his brother Donte's debit card until sometime after he entered the residence is not a defense. The evidence was overwhelming that Daniel stole Donte's debit card. Daniel later returned the card and his own text messages confirmed that he had taken it. Whether he intended to steal the card when he entered the residence does not matter. "[A] defendant may form the purpose to commit a criminal offense at any point during the course of the trespass." *State v. Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037 (2000), syllabus. In fact, in light of *Fontes*, we have held that an argument that a trespasser did not have the "purpose to commit * * * any criminal offense" because he did not form the intent to commit the criminal offense until after having entered a residence lacks arguable merit. *State v. Cook*, 2d Dist. Montgomery No. 26809, 2016-Ohio-4574, ¶ 7.[3] Therefore, arguing that Daniel did not have the purpose to commit a criminal offense when he trespassed into his brother's home, but formed the intent after entering the home, even if true, was simply not a viable defense.

**{¶ 30}** Daniel's second point is based on the fact that the trial court and parties agreed that the three offenses in this case were not allied offenses of similar import.

---

[3] *State v. Cook* is an aggravated burglary case under R.C. 2911.11(A)(1), as compared to burglary, R.C. 2911.12(A)(1). *Cook* at ¶ 4. Aggravated burglary requires additional elements of either (1) infliction of physical harm or 2) possession of a deadly weapon. But regarding a discussion about "purpose to commit * * * any criminal offense" or whether a person were actually present, these statutory offenses contain the same elements.

Therefore, Daniel argues that since he had a separate motivation for each charge, he should have been charged under R.C. 2911.12(B) rather than R.C. 2911.12(A)(1). The State has not responded to this argument.

**{¶ 31}** In 2015, the Supreme Court of Ohio clarified the law pertaining to allied offenses of similar import. The court held that "[w]hen the defendant's conduct constitutes a single offense, the defendant may be convicted and punished only for that offense. When the conduct supports more than one offense, however, a court must conduct an analysis of allied offenses of similar import to determine whether the offenses merge or whether the defendant may be convicted of separate offenses." *State v. Ruff*, 143 Ohio St.3d 114, 2015-Ohio-995, 34 N.E.3d 892, ¶ 24, citing R.C. 2941.25(B).

**{¶ 32}** The court went on to note that:

A trial court and the reviewing court on appeal when considering whether there are allied offenses that merge into a single conviction under R.C. 2941.25(A) must first take into account the conduct of the defendant. In other words, how were the offenses committed? If any of the following is true, the offenses cannot merge and the defendant may be convicted and sentenced for multiple offenses: (1) the offenses are dissimilar in import or significance – in other words, each offense caused separate, identifiable harm, (2) the offenses were committed separately, or (3) the offenses were committed with separate animus or motivation.

*Id.* at ¶ 26.

**{¶ 33}** After *Ruff* was decided, courts considering the interrelationship of burglary with other offenses have held that the crime of burglary is complete upon intrusion into a

prohibited place with the intent to commit an offense like theft.   *See State v. Back*, 12th Dist. Butler No. CA2015-03-037, 2015-Ohio-4447, ¶ 12.   In *Back*, the defendant was convicted of both burglary and grand theft, and he claimed on appeal that the offenses should have been merged because they "were committed with a 'single animus and a single course of conduct.' "   *Id.* at ¶ 7.

**{¶ 34}** The court of appeals disagreed, commenting that:

In order to commit burglary, appellant had to, by force, stealth, or deception, trespass in a separately secured or separately occupied portion of an occupied structure with the purpose to commit any criminal offense. Therefore, once inside the garage on Sauterne Drive, with the requisite intent, the burglary was complete.   The theft offense did not occur until later, when appellant physically removed the .32 caliber revolver from the garage.   At this time, grand theft of the firearm was complete. "Consequently, 'because one offense was completed before the other offense occurred, the two offenses were committed separately for purposes of R.C. 2941.25(B) notwithstanding their proximity in time and that one was committed in order to commit the other.' "

*Back* at ¶ 12, quoting *State v. Lane*, 12th Dist. Butler No. CA2013-05-074, 2014-Ohio-562, ¶ 16, which in turn quotes *State v. DeWitt*, 2d Dist. Montgomery No. 24437, 2012-Ohio-635, ¶ 33.   *See also State v. Champada*, 6th Dist. Fulton No. F-14-006, 2016-Ohio-7291, ¶ 24 (burglary attempt was complete upon breaking into door on the premises and subsequent thefts of items were not allied offenses); *State v. Sutton*, 8th Dist. Cuyahoga No. 102300, 2015-Ohio-4074, ¶ 64 (no allied offense of theft and burglary; "burglary was

accomplished when [defendant] used deception to obtain [owner's] consent to remain in the home throughout the night with the intention to commit a theft offense," and theft occurred later in the night, "after the trespass with deception had been accomplished"); *State v. Evett*, 9th Dist. Medina No. 14CA0008-M, 2015-Ohio-2722, ¶ 39 (burglary was accomplished by defendant's entrance into home with intent to steal when she knew she was not welcome; theft occurred later).

{¶ 35} The basis for these holdings is that " ' "[i]t is the intent to commit any criminal offense while trespassing that constitutes commission of the burglary crime. No criminal offense actually needs to be committed to support the burglary charge." ' " *State v. Justice*, 8th Dist. Cuyahoga No. 106895, 2018-Ohio-4119, ¶ 11, quoting *State v. Yancey*, 8th Dist. Cuyahoga No. 104587, 2017-Ohio-1040, ¶ 9. (Other citation omitted.)

{¶ 36} In *State v. Gillman*, 2015-Ohio-4421, 46 N.E.3d 130 (4th Dist.), the court also held that burglary and theft were not allied offenses because the harm resulting from each crime differed. The burglary caused harm to the occupants' sense of safety and privacy, while the theft caused economic harm. *Id.* at ¶ 23.

{¶ 37} After reviewing the above cases, we agree with the holdings of the other courts and conclude that the burglary was accomplished when Daniel forced his way into the house with intent to steal something. Furthermore, to the extent that Daniel's argument could be interpreted as an assertion of plain error in the court's failure to merge the offenses, it is also not well taken. The matter was not raised in the trial court and, for the reasons stated, there has been no error or plain error. *Champada* at ¶ 25.

{¶ 38} Based on the preceding discussion, the First Assignment of Error is overruled.

III.   Ineffective Assistance of Counsel

{¶ 39} Daniel's Second Assignment of Error states that:

The Trial Counsel for Defendant Was Ineffective in Requesting the

Incorrect Lesser Included Jury Instruction.

{¶ 40} Under this assignment of error, Daniel contends that trial counsel rendered ineffective assistance by focusing his argument for a lesser included offense on R.C. 2911.12(A)(2), rather than making an argument under R.C. 2911.12(B).   Specifically, Daniel argues that his intent in entering the house was to spend time with his brother, Donte, and that trial counsel precluded this defense by focusing on whether a person was "likely to be present" in the house.

{¶ 41} "The right to counsel plays a crucial role in the adversarial system embodied in the Sixth Amendment, since access to counsel's skill and knowledge is necessary to accord defendants the 'ample opportunity to meet the case of the prosecution' to which they are entitled."   *Strickland v. Washington*, 466 U.S. 668, 685, 104 S. Ct. 2052, 80 L.Ed.2d 674 (1984), quoting *Adams v. United States ex rel. McCann*, 317 U.S. 269, 275, 63 S.Ct. 236, 87 L.Ed. 268 (1942).

{¶ 42} "A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components.   First, the defendant must show that counsel's performance was deficient.   This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment.   Second, the defendant must show that the deficient performance prejudiced the defense.   This requires showing that

counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id*. at 687. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id*. at 691.

{¶ 43} In *Strickland*, the court also stressed that "[j]udicial scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable. * * * A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time. Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.' " *Id*. at 689, quoting *Michel v. Louisiana*, 350 U.S. 91, 101, 76 S.Ct. 158, 100 L.Ed. 83 (1955). With these standards in mind, we will consider the circumstances surrounding the jury charge.

{¶ 44} Before trial, Daniel's counsel submitted proposed jury instructions. *See* Proposed Partial Jury Instructions (Apr. 24, 2019). At that time, counsel proposed instructions on two lesser included offenses: R.C. 2911.12(A)(3), a third-degree felony, and R.C. 2911.12(B), a fourth-degree felony.[4] Part of the proposed instructions stated

---

4 In his brief, Daniel contends that the third-degree lesser included offense was R.C.

that "The essential elements of the offense [of] second degree burglary are the same as third degree burglary with the exception that a person is not present and the difference between third degree burglary and fourth degree burglary is that the defendant trespassed in an occupied structure without purpose to commit an offense therein." *Id.* at p. 2.

{¶ 45} The reason R.C. 2911.12(B) imposes a lesser degree of fault is that trespassers do not need to have intent to commit a crime, nor do they have to actually commit a crime other than trespassing by force, stealth, or deception. Specifically, R.C. 2911.12(B) states that "[n]o person, by force, stealth, or deception, shall trespass in a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present."

{¶ 46} Similarly, R.C. 2911.12(A)(3) imposes a lesser degree of fault, by prohibiting "Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure, with purpose to commit in the structure or separately secured or separately occupied portion of the structure any criminal offense."

---

2911.12(A)(2). *See* Appellant's Brief, p. 12. The instructions submitted to the trial court are unclear, as they refer to the fourth-degree and third-degree felonies without specifying the Revised Code Section or subsection, and refer in another part of the instructions to R.C. 2911.12(A)(2) in the context of whether the defendant was likely to be present. See Proposed Partial Jury Instructions, p. 2 and 3. Whether this was a typographical error or not is unclear, and the court's discussion of the instructions at trial does not specify which Revised Code section or subsections the court referenced. However, it is clear that trial counsel was referring to R.C. 2911.12(A)(3) and R.C. 2911.12(B) in the instructions, because they are the only potential third- and fourth-degree felonies that could be involved. Specifically, under R.C. 2911.12(D), a violation of either R.C. 2911.12(A)(1) or R.C. 2911.12(A)(2) is a second-degree felony. The third-degree felony under that statute is contained in R.C. 2911.12(A)(3), and R.C. 2911.12(A)(2) would not have been a lesser included offense to R.C. 2911.12(A)(1). As a result, we need not consider the potential application of R.C. 2911.12(A)(2) or its language.

In this situation, lesser fault is justified because no one is present other than the wrongdoer, which decreases the potential harm to others.

{¶ 47} At the end of the State's case, Daniel's counsel made a Crim.R. 29 motion. During discussion of the motion, Daniel's counsel reminded the court that he had submitted proposed instructions on the lesser included offenses, but understood that the court did not intend to give those instructions to the jury.   *See* Tr., Vol. III, p. 309.   The court did not comment at that time.

{¶ 48} Subsequently, the court briefly mentioned the request for instructions.   The court first noted that the indictment "does not utilize the phraseology of the code section that deals with likely to be present and there is evidence that a witness was present, indeed that's the only witness that even places the Defendant inside the house, therefore, it will be very unlikely for the jury to find that no one was present at the time of these events."   *Id.* at 312.   The court went on to stress that, "Therefore, there is no way that element cannot be found by a jury, which is a requirement for a lesser included offense, therefore, the request for a lesser included offense will be denied as to the Burglary counts."   *Id.* at p. 312-313.

{¶ 49} Daniel has not raised the applicability of R.C. 2911.12(A)(3), which as noted is a third-degree felony and a lesser included offense.   As the trial court correctly observed, a person was admittedly present in the house, and there would have been no basis for giving an instruction on this lesser-included offense, which allows conviction where no one is present in the occupied structure.

{¶ 50} The trial court was mistaken, however, with respect to the lesser included offense in R.C. 2911.12(B), because it does not pertain only to situations where a person

other than the defendant or an accomplice is likely to be present. Instead, this subsection uses the disjunctive form, i.e., it refers to the fact that a person is trespassing "when any person other than an accomplice of the offender is present *or* likely to be present * * *." (Emphasis added).

{¶ 51} "When construing the language of a statute, we begin by determining the intent of the General Assembly. The intent of the General Assembly 'is primarily determined from the language of the statute itself.' When the statute is unambiguous, the court must apply it as written." (Citations omitted.) *State ex rel. Stevens v. Fairfield Cty. Bd. of Elections.*, 152 Ohio St.3d 584, 2018-Ohio-1151, 99 N.E.3d 376, ¶ 17.

{¶ 52} R.C. 2911.12(B) is unambiguous concerning the language at issue here. Under the clear meaning of this subsection, a jury can conclude that the statutory elements are satisfied either if a person other than the defendant or an accomplice is present in a structure *or* if a such other person is likely to be present in the structure. As a result, the fact that a person is actually present does not preclude giving a lesser included offense instruction under R.C. 2911.12(B). Because the instruction can be given whether a person is present or is likely to be present, the trial court erred in concluding otherwise. This error, however, was by the court, not by Daniel's counsel, who did ask for the jury to be instructed on the lesser included offense in R.C. 2911.12(B).

{¶ 53} Nonetheless, any error is irrelevant because Daniel's argument is based on an unfounded premise. Contrary to Daniel's assertion, there was no evidence that he went to the house that day to spend time with his younger brother and not to commit a crime. In the first place, when Donte entered the kitchen, Daniel was surprised to see him. No testimony contradicted Donte's account. If Daniel came to the house that day

to visit with Donte, Daniel would not have been surprised to see Donte; he would have expected to see him.

{¶ 54} Furthermore, for the reasons previously discussed, it is abundantly clear that Daniel did not come to the house that day to spend time with Donte. Instead, Daniel did not have permission to be in the house, forcibly entered by pushing in a window, and had intent to steal something. Daniel's own statements confirmed this, and there was simply no evidence to the contrary.

{¶ 55} Likewise, because the criminal offense of theft of the debit card, a misdeed which is undisputed, constitutes a "purpose to commit * * * any criminal offense," there is no reasonable argument whether trial counsel was ineffective for failing to focus on a defense that Daniel did not form the intent to steal the card until after he entered the residence. Daniel argues that "[Trial counsel] did not put any emphasis on the issue that Mr. [Daniel] Chafin did not enter the home with the purpose to commit any criminal infractions." (Appellant's Brief at 12.) However, what Daniel argues is not a defense. *Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037, at syllabus. Trial counsel cannot be faulted for failing to focus on something that as a matter of law is not a defense.

{¶ 56} As a result, Daniel's trial counsel did not provide ineffective assistance. Counsel asked for instructions on the lesser included offense in R.C. 2911.11(B) and was not responsible for any error in the court's reasoning for rejecting the instructions (an error that has not been raised on appeal). Any error in reasoning on this particular point, however, was irrelevant, because an instruction on R.C. 2911.12(B) was not warranted based on the facts presented.

{¶ 57} Moreover, as noted, refusing to give a lesser and included instruction on

trespass into a habitation under R.C 2911.12(B) would also have been legally correct. This subsection allows conviction when any person "is present or likely to be present," as opposed to R.C. 2911.12(A)(1), which is limited to trespass when another person *is* actually present. As noted, that distinction is irrelevant here. There is no question that Donte was actually present, as Daniel's own argument acknowledges this fact. *See* Appellant's Brief at p. 12 ("Mr. [Daniel] Chafin went into the home to spend some time with his little brother, Donte.") Therefore, the distinction between "is present" or "likely to be present" is of no consequence here and would not be a reason to give either lesser included instruction.

{¶ 58} There is no question that Daniel stole the debit card, and we have also concluded that an unequivocal purpose to steal was not required to have been formed before he entered the house. *Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037, at syllabus. Consequently, Daniel's contention that he formed the intent to steal the card after entering was not a legitimate defense, and neither of the distinctive elements of R.C. 2911.12(B) applied.

{¶ 59} Again, on this record, no reasonable juror could have found that Daniel's purpose in stealing the debit card was not a purpose to commit a criminal offense, and no reasonable juror could have found that a person was only likely to be present rather than actually present. As a result, an instruction on R.C. 2911.12(B) was not only unnecessary, it would have been wrong, although not for the reasons the trial court stated.

{¶ 60} Accordingly, the Second Assignment of Error is overruled.

IV. Conclusion

{¶ 61} All of Daniel's assignments of error having been overruled, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

HALL, J., concurs.

DONOVAN, J., concurs in judgment only.

Copies sent to:

Marcy A. Vonderwell
Adam J. Arnold
Hon. Stephen Wolaver