[Cite as *State v. Hudson*, 2018-Ohio-423.]

**IN THE COURT OF APPEALS OF OHIO
SECOND APPELLATE DISTRICT
MONTGOMERY COUNTY**

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 27561 |
| | : | |
| v. | : | Trial Court Case No. 2017-CR-80 |
| | : | |
| LARRY D. HUDSON | : | (Criminal Appeal from |
| | : | Common Pleas Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . .

O P I N I O N

Rendered on the 2nd day of February, 2018.

. . . . . . . . . .

MATHIAS H. HECK, JR., by MICHAEL J. SCARPELLI, Atty. Reg. No. 0093662, Montgomery County Prosecutor's Office, Appellate Division, Montgomery County Courts Building, 301 West Third Street, 5th Floor, Dayton, Ohio 45402
    Attorney for Plaintiff-Appellee

BROCK SCHOENLEIN, Atty. Reg. No. 0084707, 371 West First Street, Dayton, Ohio 45402
    Attorney for Defendant-Appellant

. . . . . . . . . . . .

FROELICH, J.

{¶ 1} Larry D. Hudson was convicted after a bench trial in the Montgomery County Court of Common Pleas of burglary in violation of R.C. 2911.12(A)(2), a felony of the second degree. Hudson appeals from his conviction, claiming that the trial court erred in denying his Crim.R. 29 motion and that his conviction was against the manifest weight of the evidence.

{¶ 2} For the following reasons, we agree with Hudson that there was insufficient evidence to support his conviction for burglary, in violation of R.C. 2911.12(A)(2), and that his conviction for that offense was likewise against the manifest weight of the evidence. However, we find that the evidence does support a conviction for the lesser-included offense of trespassing in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B), a felony of the fourth degree. Hudson's conviction for burglary will be vacated, and the matter will be remanded for the trial court to modify its judgment to indicate that Hudson was convicted of trespassing in a habitation when a person is present or likely to be present and for sentencing on that offense.

## I. Evidence at Trial and Procedural History

{¶ 3} At trial, the State presented the testimony of Nancy Lucy, the owner of the property at issue, and four Dayton police officers. The defense presented no witnesses. The evidence at trial established the following facts.

{¶ 4} In July 2016, Lucy purchased the property located at 5 Victor Avenue in Dayton. The property has two apartments: a lower apartment (Apt. 5A) and an upper apartment (Apt. 5B); each apartment has a separate entrance. Between July 2016 and December 2, 2016, Lucy lived in the upstairs apartment while tenants occupied the lower

apartment. The tenants were evicted and moved out on December 2, 2016; the gas and electricity in the lower apartment were turned off when the tenants left. The lower apartment had water access throughout December 2016.

{¶ 5} Lucy began to have work performed on the lower apartment, such as plumbing and furnace repairs. After Christmas, she began to move from the upper to the lower apartment. The gas and electricity were reinstated on January 3. In early January, the lower apartment was still in disrepair. The front living room had only a television on a night table and a couch.

{¶ 6} Lucy testified that she continues to own the property and to reside in Apartment 5A. The upper apartment is vacant. The only person other than Lucy with authorized access to the property is a maintenance person. Lucy testified that Hudson did not have permission to be in her residence.

{¶ 7} At approximately 7:00 a.m. on January 8, 2017, Lucy left for work, locking the doors, but not the deadbolt. Lucy testified that, when she left, there was no damage to the window to the left of the front door. One window in the lower apartment had pre-existing damage; the glass portion of a window in the room to the right of the front door had previously been damaged by tenants.[1]

{¶ 8} Lucy returned home at approximately 8:40 p.m., but she could not get in because the deadbolt was locked. Lucy believed someone was in the apartment, and she went to a friend's home for an hour. While there, she recalled that she had a key to

---

[1] When photographs of the property were taken in March 2017, two additional windows of the lower apartment had cardboard covering broken glass. However, Lucy testified that only one window had pre-existing damage on January 8, 2017.

the deadbolt, and she returned to her property. Lucy went through the front door into the front living room. She yelled, "Anybody in here?" Lucy heard snoring from a man on the couch. Realizing that she had not woken the man, Lucy exited the building, went to her car, and called the police.

{¶ 9} The police arrived within a few minutes, and Lucy gave them permission to enter her residence. Officers David Denlinger and Joe Drumm went into the lower apartment and located Hudson asleep on the couch in the front room. Initially, Officer Denlinger loudly called to Hudson, but he did not respond. The officers then shook Hudson until he began to wake. Hudson was placed in handcuffs and taken outside. Denlinger testified that he searched Hudson, who was wearing multiple layers of clothing. Denlinger found a BB gun, 49 rounds of ammunition, a screwdriver (slightly bent), and three silver pipes of various lengths and widths with burnt ends; at trial, Denlinger and Drumm identified these pipes as crack pipes. Hudson did not identify himself to the officers, but another officer, Officer Jeremy Stewart, recognized Hudson from a prior encounter and provided his name to the other officers.

{¶ 10} After the police left, Lucy did a walk-through of the house. She noticed that two windows were broken and the screen of one of the windows at the rear of the house was torn.[2]

{¶ 11} While in jail, Hudson spoke to an individual over the telephone. During the recorded conversation, Hudson stated that he was in a "bando" (abandoned property) with a pistol, drugs, and criminal tools when he was arrested.

---

[2] Lucy also testified that her furnace was missing from the basement. The State did not argue during closing argument that Hudson was responsible for the alleged theft of the furnace.

{¶ 12} The trial court conducted a bench trial on March 30, 2017. At the conclusion of the State's case, Hudson made a Crim.R. 29 motion for a judgment of acquittal, which the trial court denied. After the parties provided closing arguments and the court took a recess, the court orally found Hudson guilty of burglary, in violation of R.C. 2911.12(A)(2). The court filed a written verdict on April 4, 2017. The trial court subsequently sentenced Hudson to two years in prison.

{¶ 13} Hudson appeals from his conviction, claiming that the trial court erred in denying his Crim.R. 29 motion and that his conviction was against the manifest weight of the evidence.

## II. Standards of Review

{¶ 14} When reviewing the denial of a Crim.R. 29(A) motion, an appellate court applies the same standard as is used to review a claim based on the sufficiency of the evidence. *State v. Page*, 2d Dist. Montgomery No. 26670, 2017-Ohio-568, ¶ 7, citing *State v. Sheppeard*, 2d Dist. Clark No. 2012 CA 27, 2013-Ohio-812, ¶ 51. "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386, 678 N.E.2d 541 (1997). The relevant inquiry is whether any rational finder of fact, after viewing the evidence in a light most favorable to the State, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997). A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." *Id.* In reviewing the trial court

denial of a Crim.R. 29(A) motion at the end of the State's case, we consider only the evidence then available to the trial court. *Sheppeard* at ¶ 51.

{¶ 15} In contrast, when reviewing an argument challenging the weight of the evidence, an appellate court reviews the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether, in resolving conflicts in the evidence, the finder of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. *Thompkins*, 78 Ohio St.3d at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

### III. Hudson's Burglary Conviction

{¶ 16} R.C. 2911.12(A)(2) provides:

(A) No person, by force, stealth, or deception, shall do any of the following:

* * *

(2) Trespass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent or temporary habitation of any person when any person other than an accomplice of the offender is present or likely to be present, with purpose to commit in the habitation any criminal offense[.]

"Trespass" is defined under R.C. 2911.21(A). Pursuant to that statute: "No person, without privilege to do so, shall * * * [k]nowingly enter or remain on the land or premises of another." R.C. 2911.21(A)(1). "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "Force" is satisfied by "any effort physically exerted." *State v. Johnson*,

2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, 947 N.E.2d 1281, ¶ 18 (9th Dist.).

**{¶ 17}** On appeal, Hudson claims that there was insufficient evidence that he entered the lower apartment with the purpose to commit a criminal offense. He further claims that he did not act with the necessary mental state with respect to the "likely to be present" element of the offense. Hudson asserts that he reasonably believed that the apartment was abandoned.

**{¶ 18}** We discussed the "likely to be present" element of burglary in *State v. Frock*, 2d Dist. Clark No. 2004 CA 76, 2006-Ohio-1254, as follows:

"Although the term 'likely' connotes something more than a mere possibility, it also connotes something less than a probability or reasonable certainty. A person is likely to be present when a consideration of all the circumstances would seem to justify a logical expectation that a person could be present." *State v. Green* (1984), 18 Ohio App.3d 69, 72, 480 N.E.2d 1128. In determining whether persons were present or likely to be present under R.C. 2911.12(A)(2), "the defendant's knowledge concerning habitation is not material. The issue is not whether the burglar subjectively believed that persons were likely to be there, but whether it was objectively likely." *State v. Brown* (Apr. 28, 2000), Hamilton App. No. C-980907. Merely showing that people dwelled in the residence is insufficient; the state must adduce specific evidence that the people were present or likely to be present at the time of the burglary. *State v. Fowler* (1983), 4 Ohio St.3d 16, 18, 445 N.E.2d 1119.

The supreme court has held that the "likely to be present" element is satisfied where the structure is a permanent dwelling house which is regularly inhabited, the occupants were in and out of the house on the day in question, and the occupants were temporarily absent when the burglary occurred. *State v. Kilby* (1977), 50 Ohio St.2d 21, 23, 361 N.E.2d 1336. *See, also, Fowler*, 4 Ohio St.3d at 19, 445 N.E.2d 1119; * * *. On the other hand, courts have found insufficient evidence that the occupants were likely to be present when they were absent for an extended period, such as a vacation, and no one else was regularly checking on the house. * * * Similarly, if the occupants of a house are gone for the entire work day, they are not "likely to be present" during the day.

*Frock* at ¶ 20-21.

{¶ 19} In this case, Lucy testified that she began moving from the upper apartment to the lower apartment in December 2016, and that she was residing in the lower apartment on January 8, 2017, the day of the burglary. Lucy worked during the day as a provider of home healthcare, and she returned to her residence around 8:45 p.m. At that time, Lucy found indications that a person was in her apartment, namely that the deadbolt to the front door was locked. When she entered the apartment an hour later, she found Hudson asleep on her couch in the front living room. The State's evidence was sufficient to establish that Hudson trespassed in Lucy's residence at a time when a person (other than Hudson or an accomplice) was present and/or was likely to be present. The fact that Hudson may have subjectively and perhaps reasonably believed, based on the condition of the property, that the lower apartment was abandoned was of no legal

import.

{¶ 20} Although Hudson does not specifically challenge the trial court's implicit finding that he trespassed by "force, stealth, or deception," we note that the State's evidence was sufficient to prove that Hudson entered Lucy's residence by force and without permission. Lucy testified that only she and a maintenance man were authorized to enter her apartment; Hudson did not have permission to enter. She further testified that the window to the left of the front door was intact when she left for work on January 8, 2017, but was broken when she came home. Hudson was found with a bent screwdriver, and Hudson stated in the recorded jail telephone call that he "had criminal tools on me" when he was arrested. Officer Drumm testified that officers might "find criminal tools like a screwdriver" when a person had to pry his or her way into a building.

{¶ 21} Hudson further argues that the State's evidence was insufficient to establish that he trespassed in Lucy's residence "with purpose to commit in the habitation any criminal offense." He claims that he entered the apartment solely to sleep. The State responds that the trial court could have reasonably found that Hudson trespassed in Lucy's residence with the purpose to commit possession of illegal drugs, possession of criminal tools, and/or unauthorized use of property.

{¶ 22} To establish the "any criminal offense" prong of the burglary statute, the State is required to show that the defendant "invaded the dwelling for the purpose of committing a crime or that he formed that intent during the trespass." *See State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, 889 N.E.2d 995, ¶ 33 (addressing the "any criminal offense" prong of aggravated burglary, R.C. 2911.11(A)(2)), citing *State v. Fontes*, 87 Ohio St.3d 527, 721 N.E.2d 1037 (2000), syllabus. "The purpose with which

a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence." (Citation omitted.) *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, ¶ 40; *see* R.C. 2901.22(A) (defining purposeful mens rea).

**{¶ 23}** First, the State claims that there was sufficient evidence that Hudson "entered Nancy Lucy's residence with the intent to possess and use illegal drugs while inside." In support of this argument, the State notes that (1) Hudson was found carrying three objects that Officers Denlinger and Drumm identified as crack pipes, (2) Hudson stated in the recorded jail phone call that he "had drugs on me" when he was "caught," and (3) "Officer Drumm testified that Hudson's deep sleep was consistent with someone who was 'coming down' from a crack cocaine high."

**{¶ 24}** We disagree with the State's characterization of Officer Drumm's testimony. Officer Drumm testified that he could not tell whether Hudson was "honestly asleep" or whether he was "playing possum." Drumm did not hear any snoring. On redirect examination, the State asked Officer Drumm if he had experience with people who had been high on meth, heroin, or cocaine; Drumm responded affirmatively. The prosecutor then asked, "To your knowledge, what happens to a person after they come down off their high of – from meth or crack?" Drum responded, "They crash. Usually fall asleep. Yeah. They crash." (Tr. 111.) The prosecutor did not ask and did not elicit any testimony that the officers had observed signs that Hudson had used drugs in Lucy's residence, nor did the officers testify that they believed that Hudson was in a drug-induced sleep when they attempted to wake him. The State's argument that Hudson was in a drug-induced sleep is speculation.

{¶ 25} The State's evidence that Hudson trespassed in Lucy's residence for the purpose of possessing and using crack consisted solely of evidence that Hudson possessed three crack pipes and that he told a female acquaintance during the recorded jail phone call that he "had drugs on me" when he was "caught." However, the officers did not locate drugs on Hudson when he was arrested; he simply had crack pipes. In our view, the fact that Hudson possessed crack pipes, without more, is insufficient to establish that he had a purpose to possess and use illegal drugs inside the residence.

{¶ 26} Second, the State claims that Hudson trespassed on Lucy's property for the purpose of possessing criminal tools. As stated above, there was evidence that Hudson possessed criminal tools (the screwdriver), and he admitted as much in the recorded jail telephone call. There is no evidence, however, that Hudson trespassed on Lucy's apartment for the *purpose of* possessing the screwdriver (and the crack pipes). And, having brought the screwdriver and crack pipes into the residence with him, the evidence does not support a conclusion that he formed the intention to possess those items once he was inside the apartment.

{¶ 27} Finally, the State claims that Hudson entered Lucy's apartment with the purpose to commit unlawful use of property (i.e., Lucy's couch), in violation of R.C. 2913.04. R.C. 2913.04(A) provides: "No person shall knowingly use or operate the property of another without the consent of the owner or person authorized to give consent." A violation of R.C. 2913.04(A) is generally a fourth-degree misdemeanor, but may be a more serious offense if certain circumstances exist. *See* R.C. 2913.04(F). R.C. 2913.04 contains two affirmative defenses: (1) "At the time of the alleged offense, the actor, though mistaken, reasonably believed that the actor was authorized to use or

operate the property[,]" and (2) "At the time of the alleged offense, the actor reasonably believed that the owner or person empowered to give consent would authorize the actor to use or operate the property." R.C. 2913.04(E), incorporating by reference the affirmative defenses in R.C. 2913.03(C).

{¶ 28} R.C. 2913.04 was enacted along with a companion statute, R.C. 2913.03, which addresses the unauthorized use of motor vehicles. Both statutes are located within the theft and fraud provisions of the Ohio Revised Code. The Legislative Service Commission notes regarding the two statutes illuminate the purpose behind their creation. The Legislative Service Commission wrote with respect to R.C. 2913.03:

This section defines two degrees of the offense commonly known as "joyriding." For some years auto theft has been an increasing problem, and in this type of offense it is often difficult to prove that the offender intended to permanently deprive the owner of the car. The offense of joyriding was designed to alleviate the enforcement problem this creates and the gist of the offense is simply an unauthorized use of a vehicle. It is unnecessary to prove an intent to permanently deprive the owner.

In addition to automobile joyriding, the section covers joyriding in planes, motorcycles, motor boats, and other motor-propelled vehicles.

Also, the offense is much more serious if the vehicle is either taken out of the state, or is kept by the offender for more than two days. In the latter context, the offender must actually keep possession of the vehicle for more than two days. It is not sufficient if he abandons the vehicle and it is not recovered within that time. The rationale for making joyriding more

serious under these circumstances is, first, because taking the stolen vehicle out of the state or keeping it for more than 48 hours enormously complicates enforcement problems and, second, because either of such acts may suggest that the offender's purpose was more than just a short joyride.

Two affirmative defenses to a charge under the section are spelled out, both dealing with a bona fide belief on the actor's part that he had the owner's express or implied consent to use the vehicle.

**{¶ 29}** The Legislative Service Commission further stated as to R.C. 2913.04:

This section is similar to new section 2913.03 of the Revised Code, except that it deals with the unauthorized use of property other than vehicles, and the penalty remains the same regardless of where the offender takes the property or how long he keeps it. The same defenses given in section 2913.03 apply to this section.

**{¶ 30}** Hudson entered what he thought was a "bando" and passed out on the couch, without Lucy's permission. In the procrustean logic of legal analysis, he was "using" the couch, much as he used the floor or the carpet or even the heat that he sought in the room by trespassing in the structure, and he did not have the occupant's permission to do any of the these things. However, such an interpretation of the statute results in an overinclusion of prohibited behaviors and thus the criminalization of ordinary everyday actions. *See* Solan, *Law Language, and Lenity*, 40 Wm. & Mary L.Rev. 57 (1998). Moreover, such an interpretation violates the rule of lenity and the spirit of the law and produces an unreasonable result. As stated by the United States Supreme Court:

It is a familiar rule that a thing may be within the letter of the statute and yet not within the statute, because not within its spirit nor within the intention of its makers. This has been often asserted, and the Reports are full of cases illustrating its application. This is not the substitution of the will of the judge for that of the legislator; for frequently words of general meaning are used in a statute, words broad enough to include an act in question, and yet a consideration of the whole legislation, or of the circumstances surrounding its enactment, or of the absurd results which follow from giving such broad meaning to the words, makes it unreasonable to believe that the legislator intended to include the particular act.

*Holy Trinity Church v. United States*, 143 U.S. 457, 459, 12 S.Ct. 511, 35 L.Ed. 226 (1892); *see also, e.g., Public Citizen v. United States Dept. of Justice*, 491 U.S. 440, 454, 109 S.Ct. 2558, 105 L.Ed.2d 377 (1989) ("Where the literal reading of a statutory term would 'compel an odd result,' * * * we must search for other evidence of congressional intent to lend the term its proper scope.").

{¶ 31} Under the specific facts of this case, "the logic of words should yield to the logic of realities." *DiSanto v. Pennsylvania*, 273 U.S. 34, 43, 47 S.Ct. 267, 71 L.Ed. 524 (1927) (Brandeis, J., dissenting). Hudson's sleeping on the couch, without more, did not constitute the crime of unauthorized use of property.

{¶ 32} Moreover, the State's evidence, particularly Hudson's recorded jail phone call, indicated that Hudson believed, albeit mistakenly, that the property was abandoned, and that no permission was required to use the couch. Lucy testified that her tenants of the lower apartment moved out on December 2, at which time the gas and electricity were

turned off. Lucy stated that her tenants returned to do "a little vandalism here and there" after that date. Lucy did not turn on the gas and electricity and begin to move into the lower apartment until a few days before the burglary. The sparse number of objects within the front living room (couch and a small television on a night table) and the relatively poor condition of the residence suggests that Hudson's belief that the lower apartment was abandoned may have been reasonable.

{¶ 33} In summary, we find that the State's evidence did not support Hudson's conviction for burglary in violation of R.C. 2911.12(A)(2), and his conviction was necessarily against the manifest weight of the evidence. Hudson's assignments of error are sustained.

{¶ 34} Nevertheless, the State's evidence was sufficient to convict Hudson of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B), a felony of the fourth degree and a lesser included offense of burglary.[3] We note that, during closing argument, the prosecutor stated that he believed the trial court was "duty bound to consider" the offense of trespass in a habitation when a person is present or likely to be present as a lesser included offense.

{¶ 35} "When a 'verdict is not sustained by sufficient evidence or is contrary to law; but if the evidence shows the defendant is not guilty of the degree of crime for which he was convicted, but guilty of a lesser degree thereof, or of a lesser crime included therein,

---

[3] " 'There is a constitutional requirement that a criminal defendant has notice of the offense(s) charged against him. Sixth Amendment to the United States Constitution; Section 10, Article I of the Ohio Constitution. However, * * * if the offense is a lesser included offense of the crime charged, notice is presumed.' " (Citation omitted.) *State v. Patton*, 2d Dist. Clark No. 2011 CA 94, 2013-Ohio-961, ¶ 18, fn. 2, quoting *State v. Ebert*, 7th Dist. Mahoning No. 07-MA-196, 2008-Ohio-6596, ¶ 11.

the court may modify the verdict or finding accordingly, without granting or ordering a new trial.' " *State v. Johnson*, 188 Ohio App.3d 438, 2010-Ohio-3345, 935 N.E.2d 895, ¶ 22 (2d Dist.), quoting R.C. 2945.79(D). *See also State v. Jackson*, 4th Dist. Ross No. 12 CA 3309, 2012-Ohio-5619; *Rutledge v. United States*, 517 U.S. 292, 306, 116 S.Ct. 1241, 134 L.Ed.2d 419 (1996).

## IV. Conclusion

**{¶ 36}** Hudson's conviction for burglary, in violation of R.C. 2911.12(A)(2), will be vacated. The matter will be remanded for the trial court to modify its judgment to indicate that Hudson was convicted of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B), and for sentencing on that offense.

. . . . . . . . . . . .

TUCKER, J., concurs.

HALL, J., concurring in judgment only.

Copies mailed to:

Mathias H. Heck
Michael J. Scarpelli
Brock Schoenlein
Hon. Timothy N. O'Connell