**[Cite as *State v. Myers*, 2020-Ohio-4325.]**

# IN THE COURT OF APPEALS OF OHIO
## SECOND APPELLATE DISTRICT
## DARKE COUNTY

| | | |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 2019-CA-22 |
| | : | |
| v. | : | Trial Court Case No. 2019-CRB-001- |
| | : | 0697 |
| GARY MYERS, JR. | : | |
| | : | (Criminal Appeal from Municipal Court) |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

O P I N I O N

Rendered on the 4th day of September, 2020.

. . . . . . . . . . .

JESSE J. GREEN, Atty. Reg. No. 0040265, Assistant Prosecuting Attorney, Darke County Prosecutor's Office, 504 South Broadway, Greenville, Ohio 45331
        Attorney for Plaintiff-Appellee

DAWN S. GARRETT, Atty. Reg. No. 0055565, 70 Birch Alley, Suite 240-24005, Beavercreek, Ohio 45440
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

{¶ 1} Defendant-Appellant, Gary L. Myers, Jr. appeals from his conviction for domestic violence, a first-degree misdemeanor.  In support for his appeal, Myers contends that the trial court erred in denying his Crim.R. 29 motion for acquittal.  Myers also argues that his conviction was not supported by sufficient evidence and that the conviction was against the manifest weight of the evidence.

{¶ 2} For the reasons discussed below, the assignments of error are without merit.  Accordingly, the judgment of the trial court will be affirmed.


I.   Facts and Course of Proceedings

{¶ 3} On November 1, 2019, a complaint was filed in the Darke County Municipal Court alleging that on October 27, 2019, Myers had committed domestic violence in violation of R.C. 2919.25(A).  The victim was Myers's 77-year-old father ("Father").  After pleading not guilty to the charge, Myers was released on his own recognizance, with the stipulation that he have no contact with Father.

{¶ 4} Following a bench trial, the court found Myers guilty as charged and sentenced him to 89 days in jail, with 89 days to be served at the court's discretion.  Court costs and fines were imposed as well.

{¶ 5} At trial, the State presented testimony from Father and from Deputy Tyler Young of the Darke County Sheriff's Department.  According to Father, Myers showed up at his house on October 25, 2019, and asked if he could spend the night.  Myers had lived with Father previously but had not lived within him for about five years.  Trial Transcript ("Tr."), p. 7.   Father allowed Myers to spend the night.  However, the next morning, Myers asked if Father had any pain pills.   When Father responded that he had

a few (prescribed for medical conditions), Myers stated that he wanted one. *Id.* at p. 8. Father then asked Myers why he didn't go to the doctor. At that point, Myers jumped up and attacked Father, grabbing his arms and pushing him against the wall. *Id.*

{¶ 6} Myers then looked directly at Father, knowing he had a pacemaker, and struck him right in the chest with a closed hand, as hard as he could. *Id.* at p. 8-9. Father stated that "[Myers] knows all about my health and he directly hit me at a place where he could injure me seriously." *Id.* at p. 10. According to Father, this blow felt like a previously cracked collarbone he had, and the site was sore for three weeks. *Id.* At that point, Myers backed off. They then had a few more words, and Father told Myers to leave. Instead of doing so, Myers laid back down on the couch. *Id.*

{¶ 7} The next day, Father spoke with his daughter and decided that what Myers had done could not be allowed because Myers would just do it again if he thought he could get away with it. *Id.* at p. 10-11. As a result, Father's son-in-law took Father to the police station, where he made out a report. *Id.* at p. 11. When questioned about why he did not call the police the day the incident happened, Father said:

> I was more or less worried about keeping him [Myers] under control. He
> was in a rampage. He goes out of control in a rage. He don't loose [sic]
> his temper, it's a rage. He does it with everybody. My daughters and
> other people. * * *

Tr. at p. 13. In addition, Father said he did not call 911 that day because he was still worried about what Myers would do, and "I actually didn't because – if I did it in front of him, he'd probably got [sic] angry again and we'd probably had another conflict. That's the kind of dude he was." *Id.* at p. 14.

{¶ 8} Father testified that after the incident, he had a dark spot or bruise on his chest. He thought he had shown the chest bruise to the deputy, but no pictures were taken. *Id.* at p. 15. In addition, Father said he had a little bit of bruising on his arms where he had been grabbed, and had scratches on his arms, but they were not severe. *Id.* at p. 15.

{¶ 9} Deputy Young, who was present during Father's testimony, indicated that he had met with Father on October 27, 2019, in the lobby of the police department. According to Young, the only thing that was inconsistent between Father's statements at that meeting and Father's in-court testimony was that Father did not originally say that Myers was lying on the couch when he first began to attack Father. *Id.* at p. 20-21. Young also stated that he saw fresh scratches on Father's arms, and some old scratches and bruises. *Id.* at p. 21. Father told Young that he had gotten the scratches from an altercation with his son. *Id.*

{¶ 10} After Young took the report, he was made aware that Myers had an outstanding arrest warrant. He then went to Father's residence and arrested Myers. Tr. at p. 21. Young questioned Myers about what had happened, and Myers said the altercation did not occur. *Id.* at p. 22.

{¶ 11} During cross-examination, Young said that, because they were in a public place (the lobby), he did not have Father open up his shirt when he came to the police department, and Young did not look at Father's chest. *Id.* at p. 23.

{¶ 12} At the end of the State's case, Myers moved for a Crim.R. 29 judgment of acquittal on the issue of whether Myers was a family or household member. *Id.* at p. 25. The trial court denied the motion, found Myers guilty as charged, and imposed sentence.

This appeal followed.

## II.   The Crim.R. 29 Motion for Acquittal

{¶ 13} Myers's First Assignment of Error states that:

The Trial Court Erred to the Prejudice of Defendant When It Denied

Defendant's Motion for Acquittal.

{¶ 14} Under this assignment of error, Myers argues that the evidence was insufficient to support a conviction due to alleged inconsistencies in the evidence, such as the fact that Father did not tell Deputy Young that Myers was lying on the couch.   He further contends that Father lied about showing bruises to the deputy, that there was no independent corroboration of Father's injuries, and that Myers denied guilt.

{¶ 15} Crim.R. 29(A) provides for dismissal of charges if "the evidence is insufficient to sustain a conviction of such offense or offenses."   "A motion for acquittal under Crim.R. 29(A) is governed by the same standard as the one for determining whether a verdict is supported by sufficient evidence."   *State v. Tenace*, 109 Ohio St.3d 255, 2006-Ohio-2417, 847 N.E.2d 386, ¶ 37.   *See also State v. Hudson*, 2018-Ohio-423, 106 N.E.3d 205, ¶ 14 (2d Dist.).

{¶ 16} "A sufficiency of the evidence argument disputes whether the State has presented adequate evidence on each element of the offense to allow the case to go to the jury or sustain the verdict as a matter of law."   *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 10, citing *State v. Thompkins*, 78 Ohio St.3d 380, 678 N.E.2d 541 (1997).   In this situation, we apply the following test:

An appellate court's function when reviewing the sufficiency of the

evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.

*State v. Jenks*, 61 Ohio St.3d 259, 259-60, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by constitutional amendment on other grounds as stated* in *State v. Smith*, 80 Ohio St.3d 89, 684 N.E.2d 668 (1997).

{¶ 17} In the case before us, Myers was charged with having violated R.C. 2919.25(A), which provides that "[n]o person shall knowingly cause or attempt to cause physical harm to a family or household member." A violation of the statute is a misdemeanor of the first degree. R.C. 2919.25(D)(2).

{¶ 18} After viewing the evidence in the State's favor, as required, a reasonable trier of fact clearly could have concluded that the elements of the crime were proven beyond a reasonable doubt. Myers and Father were family members, and Myers knowingly caused Father harm by pushing him against a wall and hitting him. Whether Myers was lying on the couch before the attack was irrelevant, and Deputy Young saw fresh scratches on Father's arms.

{¶ 19} Accordingly, the First Assignment of Error is overruled.


III. Insufficiency and Manifest Weight of the Evidence

{¶ 20} Myers's Second Assignment of Error states as follows:

The Verdict Was Based Upon Insufficient Evidence and/or Was Contrary to the Manifest Weight of the Evidence.

{¶ 21} Under this assignment of error, Myers contends that his conviction was supported by insufficient evidence and was also against the manifest weight of the evidence. His grounds here are the same as previously stated in connection with denial of the Crim.R. 29 motion for acquittal. We have already rejected the sufficiency argument in that context and will not discuss it further.

{¶ 22} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. In this situation, " '[t]he court, reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the [factfinder] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, 78 Ohio St.3d at 380, 678 N.E.2d 541, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 23} Typically, in manifest weight review, we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination. *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Specifically, "in bench trials, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing

the credibility of the proffered testimony.' " *Emswiler v. Bodey*, 2d Dist. Champaign No. 2012 CA 3, 2012-Ohio-5533, ¶ 44, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984).

{¶ 24} In the case before us, the trial court made an explicit finding in its judgment entry that the decision was "[b]ased upon the evidence presented & the credibility of the witnesses." Judgment Entry, p. 1. Clearly, the trial court believed Father's testimony, and we defer to its findings.

{¶ 25} We have reviewed the entire record, including the transcript, and cannot find that this is the exceptional case where the manifest weight of the evidence fails to support the conviction. As a preliminary matter, Myers has mischaracterized some of the testimony. Father did not say that he showed the bruise on his chest to Deputy Young; he said he thought he did. Tr. at p. 15. In addition, while taking a photo of the injuries would have been a good idea, Deputy Young did observe fresh scratches on Father's arms and was able to testify to that at trial. Furthermore, the State did not have to prove that Father had actual or visible injuries; the statute includes an attempt to cause harm, and the fact that Myers pushed his father against a wall was obviously an attempt to cause harm.

{¶ 26} As an additional matter, we do not find Father's testimony as inconsistent as Myers believes. His account demonstrated that Myers harmed or attempted to harm him. Accordingly, the Second Assignment of Error is overruled.

IV. Conclusion

{¶ 27} All of Myers's assignments of error having been overruled, the judgment of

the trial court is affirmed.

. . . . . . . . . . . . .

FROELICH, J. and HALL, J., concur.

Copies sent to:

Jesse J. Green
Dawn S. Garrett
Hon. Julie L. Monnin