[Cite as *State v. Goralczyk*, 2025-Ohio-1408.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## CRAWFORD COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,

  v.

MICHAEL GORALCZYK,

    DEFENDANT-APPELLANT.

CASE NO. 3-24-01

OPINION AND
JUDGMENT ENTRY

Appeal from Crawford County Common Pleas Court
Trial Court No. 23-CR-0265

Judgment Reversed and Cause Remanded

Date of Decision:  April 21, 2025

APPEARANCES:

    *Tyler Naud Jechura* for Appellant

    *Matthew E. Crall* for Appellee

**WILLAMOWSKI, J.**

{¶1} Defendant-appellant Michael Goralczyk ("Goralczyk") brings this appeal from the judgment of the Court of Common Pleas of Crawford County convicting him of one count of burglary. On appeal Goralczyk argues that his conviction was not supported by sufficient evidence and was against the manifest weight of the evidence. For the reasons set forth below, the judgment is reversed.

*Background*

{¶2} On August 15, 2023, Goralczyk, who lived out of state, was visiting the home of the victim, who was his girlfriend at that time. The two argued and the police were called. When they arrived, the victim was inside and Goralczyk was outside. At that time, the victim asked him to leave because he was drunk and "was being ignorant." Tr. 192. The police asked if Goralczyk could sleep in the garage as he had no place to go and the victim agreed. Rather than advise Goralczyk of this, the police instead took Goralczyk to McDonald's to separate the parties and to allow Goralczyk to make calls to find a ride back out of state.

{¶3} Later, Goralczyk returned to the home and pounded on the door asking to retrieve his other phone and charger. The victim called the police again. The result of Goralczyk's actions was that he broke the glass in the door, cutting himself in the process. The victim told Goralczyk to go upstairs to charge his phone

and then leave. The victim then went to the garage to wait for the police. The police arrived and arrested Goralczyk.

**{¶4}** On August 22, 2023, the Crawford County Grand Jury indicted Goralczyk on one count of burglary in violation of R.C. 2911.12(A)(2), (D), a felony of the second degree.[1] A jury trial was held on November 8 and 9, 2023. At trial, the following evidence was presented.

**{¶5}** Officer Joseph Durbin ("Durbin") of the Crestline Police Department was dispatched to the victim's home around 11:00 a.m. on August 15, 2023. Durbin responded to a call to find a woman and Goralczyk. Durbin identified Ex. A as his body camera footage and it was played for the jury. The video showed the victim indicating that she wanted him to leave, but agreeing to allow him to sleep in the garage overnight since he had no way to get back to his home in Michigan. The victim gathered Goralczyk's belongings and the police returned the items to him. The police then took Goralczyk to McDonalds. When Durbin arrived at McDonalds with Goralczyk, he gave Goralczyk his suitcase and told him not to contact the victim because she did not wish to speak with him. Approximately 45 minutes later, Durbin was again dispatched to the home after being notified that a male had broken into the home and was inside the home. When Durbin arrived, Goralczyk was already in the backyard on the ground. The glass in the door to the home was broken

---

[1] The indictment specified that the underlying offense was theft in violation of R.C. 2913.02. The indictment was amended at trial to remove the identification of the predicate offense.

from where Goralczyk had hit it while banging on the door to get the victim to let him inside the home. Durbin noted that the victim stated to Goralczyk that she had told him to get his charger from the upstairs.

{¶6} Chief Deputy Chad Filliater ("Filliater") of the Crawford County Sheriff's Office identified Ex. B-1 and B-2 as the 911 recordings in this case. On the tape you can hear the victim telling someone to leave her alone and to not open the door. Then you hear her saying that he broke the door and telling the person to just charge his phone. The victim then tells him to go to her room and get his charger. She had moved to the garage by that time. The victim tells the other person that he can call to get a ride and to just go get the charger.

{¶7} The victim testified that she and her roommate were tenants at the home. She had been dating Goralczyk off and on for over a year and a half. During that time, the victim moved to Ohio from Michigan and they were involved in a long distance relationship. In August of 2023, Goralczyk came to stay at the victim's home to see if they could "make it work where he could move in" with the victim. Tr. 189. The victim testified that Goralczyk had "pretty much" moved in at the time of the incident. The victim testified that she wanted Goralczyk to go to rehab because "he drinks a lot of alcohol." Tr. 190. According to the victim, Goralczyk's drinking was the problem with their relationship. On August 15, the victim was on the phone with her roommate when the roommate called the police on Goralczyk

because the victim had asked Goralczyk to leave the home.[2] Tr. 191-92. The victim testified that at that time, Goralczyk was "really drunk and he was being ignorant." Tr. 192. The victim stated that they had started arguing, "cussing at each other, yelling, you know, just being stupid". Tr. 192. When Goralczyk came back to the house, he appeared to be mad, so the victim refused to open the door. The victim called 911 and then heard the glass break. Goralczyk then came into the house and was bleeding. Tr. 201.

{¶8} After Goralczyk entered the home, the victim told him to charge his phone and leave. The victim testified that she "didn't want him to not have a charger, like I didn't know if that charger just didn't work or something because I knew he needed to make phone calls, so why – after the door was already busted down I told him to go upstairs and find it." Tr. 203. The victim then went into the garage indicating that she did not feel safe in the home because Goralczyk was drunk and she "knew to stay away from him". Tr. 204. When the victim told Goralczyk to go upstairs and get his charger, he did. The victim testified that Goralczyk did not know she was on the phone with 911, so he tried to get her to go upstairs with him so she would not call the police. On cross-examination, the victim admitted that she and Goralczyk would frequently fight with her telling him to get out and then she would welcome him back. The victim described the relationship as a love-

---

[2] The roommate was not at the home at the time.

hate one. The victim also testified that at the time of the incident, she knew any altercation between the two of them "would just be verbal", but stated that she did not want to engage in the argument right then. Tr. 210. The victim admitted that when Goralczyk came into the living room he did not say anything threatening. However, the victim indicated that she had previously been threatened by Goralczyk and she had previously been scared by him. The victim also indicated that at the time of the incident, Goralczyk was living with her at the home. However, on redirect, the victim indicated that Goralczyk's name was not on the lease for the room she was renting.

{¶9} Nick Dorsey ("Dorsey") testified that on the date of the incident, he was employed as an officer with the Crestline Police Department. When he responded to the second 911 call, Goralczyk was found in the backyard near the alley behind the house. At the time, Goralczyk was walking away from the home. Dorsey ordered Goralczyk to get on the ground and Goralczyk complied immediately. Dorsey described Goralczyk as cooperative at all times. Dorsey testified that he later took Goralczyk to the hospital to treat the cuts on his arm and that Goralczyk's phone was dead at that time because the charger he had been given earlier did not work.

{¶10} Following the presentation of evidence, the jury returned a verdict of guilty. A sentencing hearing was held on December 20, 2023. The trial court

sentenced Goralczyk to a term of four to six years in prison. Goralczyk appealed

from this judgment and on appeal raised the following assignment of error.

> **The trial court abused its discretion when it convicted Mr. Goralczyk. The conviction was clearly against the manifest weight of the evidence introduced. Further the evidence that [was] introduced was insufficient to support the conviction.**

The assignment of error contains two different arguments which must be addressed

separately: sufficiency of the evidence and the manifest weight of the evidence.

*Sufficiency of the Evidence*

{¶11} Goralczyk claims that the evidence was not sufficient to support his

conviction for burglary.

> A sufficiency analysis "'determine[s] whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law.'" *State v. Thompkins*, [78 Ohio St.3d 380, (1997)], quoting Black's Law Dictionary 1433 (6th Ed.1990). If the state fails to present sufficient evidence on every element of an offense, then convicting a defendant for that offense violates the defendant's right to due process of law. *Id.* at 386-387; see also *Jackson v. Virginia*, [443 U.S. 307, 316, (1979)].

*State v. Messenger,* 2022-Ohio-4562, ¶ 13. The question of whether the evidence

presented at trial is legally sufficient to support a verdict is a question of law and

questions the adequacy of the evidence. *State v. Hulbert*, 2021-Ohio-2298, ¶ 5 (3d

Dist.). "An appellate court's function when reviewing the sufficiency of

the evidence to support a criminal conviction is to examine the evidence admitted

at trial to determine whether such evidence, if believed, would convince the average

mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991) superseded by constitutional amendment on other grounds. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 2013-Ohio-4775, ¶ 33 (1st Dist.).

{¶12} Here, Goralczyk was charged with one count of burglary in violation of R.C. 2911.12(A)(2). To obtain a conviction, the State had to prove that Goralczyk 1) by force, stealth, or deception 2) trespassed in an occupied structure being used as a permanent or temporary habitation 3) when a person, other than the offender or an accomplice, was present or likely to be present 4) with the purpose to commit in the habitation any criminal offense. R.C. 2911.12(A)(2). The record shows that the victim told Goralczyk that he was not welcome at the home anymore and that she had called the police to have him removed from the premises less than one hour before the incident in question. Additionally, the testimony of the victim as well as the audio from the 911 call shows that the window in the door was broken while Goralczyk was attempting to enter the home. The victim testified that Goralczyk let himself into the home after he broke the window in the door. This

testimony was supported by the cuts to Goralczyk's arms from the broken glass. The evidence also showed that the victim was in the home at the time Goralczyk forced his way into the home. Viewing this evidence in a light most favorable to the State, the first three elements were met leaving only the issue of whether Goralczyk had the intent to commit a criminal offense.

**{¶13}** To show the intent to commit "any criminal offense", the State must determine what predicate offenses it wishes to claim. "[D]ue process requires that the jurors must be instructed as to the specific criminal act(s) that the defendant intended to commit inside the premises." *State v. Gardner*, 2008-Ohio-2787, ¶ 72. The State then is required to show that a defendant invaded the home for the purpose of committing the crime or that he formed the intent during the trespass. *State v. Hudson*, 2018-Ohio-423 (2d Dist.). "The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence." *State v. Johnson*, 2007-Ohio-5783 (11th Dist.).

**{¶14}** Here, the jury was instructed that there were two potential underlying criminal offenses: theft and menacing. For the State to obtain a conviction, it would need to prove beyond a reasonable doubt that Goralczyk had the intent to commit one of these offenses. A theft, as charged in this case, is committed when a person, *with purpose to deprive the owner of property or services*, exerts control over the

property beyond the scope of the express or implied consent of the owner or person authorized to give consent. R.C. 2913.02(A)(2) (emphasis added). A review of the record shows that the item Goralczyk intended to "steal" was a phone charger that belonged to him, not the victim. The State argues in its brief that since he had to break into the home to get the property, it is a theft offense.[3] However, the statute does not state such a condition. It specifically requires an intent to deprive the owner of the property. The testimony does not indicate that the phone charger ever belonged to anyone besides Goralczyk. Although Goralczyk may have committed other offenses by breaking into the home, such as trespass or criminal damaging, the State failed to show that he had the intent to deprive an owner of property as is required by the statute. Thus, the State failed to prove that Goralczyk intended to commit a theft offense inside the home.

{¶15} To prove that Goralczyk intended to commit the crime of menacing as alleged in this case, the state had to show that Goralczyk would 1) knowingly cause another to believe that he would cause physical harm to 2) the person or their property. "Menacing can be implied by an offender's actions without a verbal threat provided the circumstances demonstrate that the victim genuinely believes that he or she is facing physical harm to person or property." *Fairview Park v. Werling*, 2024-Ohio-5323, ¶ 15 (8th Dist.). The essence of the offense is whether the victim

---

[3] The State does not provide any statutory section or case law to support this claim.

had a reasonable, subjective belief that physical harm was likely to occur. *State v. Charlton*, 2007-Ohio-2051 (11th Dist.).

{¶16} The victim testified that Goralczyk was angry and that she knew from her previous experience with him that when he was angry and they argued, things could become physical and things could get broken. Additionally, the victim testified that she went into the garage because she did not feel safe being in the house with him. However, she also testified that in this instance, she knew from her experience that any argument "would just be verbal." Tr. 210. The victim testified that the verbal arguments messed with her mind and she just did not want to engage in the verbal dispute that day. The victim admitted on cross-examination that Goralczyk did not threaten her and she "just wanted him to charge his phone and go, so that way we wouldn't have any more confrontation." Tr. 220. The victim further testified that when Goralczyk came in the home, she did not jump up or react. According to the victim, she was "used to the chaos". Tr. 221. The victim indicated that the reason she did not go upstairs with Goralczyk and went outside to the garage was because she knew he would convince her to not to call the police. She did not testify that she believed Goralczyk would cause physical harm to her or her property, just that she did not want to be verbally manipulated. Once Goralczyk went upstairs to get the charger, she left the home so that the situation would not escalate into that verbal disagreement. Her testimony was clear that she did not

expect this confrontation to turn physical despite such happening in the past. The victim's testimony shows that she was not afraid of physical harm to her or to her property at that time, just that she did not want to mentally deal with a verbal dispute at that time. This is not sufficient to show that Goralczyk entered the home with the purpose to menace the victim. As the testimony was insufficient to show that Goralczyk intended to commit a crime inside the home, he could not be convicted of a violation of R.C. 2911.12(A)(2).

{¶17} Although the evidence was insufficient to establish beyond a reasonable doubt that Goralczyk intended to commit a criminal offense in the home, it *was* sufficient to prove beyond a reasonable doubt that Goralczyk committed the lesser-included offense of trespass in a habitation when a person is present in violation of R.C. 2911.12(B). "[A]n appellate court '[can] modify a verdict where the evidence shows that the appellant was not guilty of the crime for which he was convicted, but is guilty of a lesser included offense . . . ." *State v. Wine*, 2012-Ohio-2837, ¶ 52 (3d Dist.) quoting *State v. Cobb*, 2003-Ohio-3821, ¶ 7 (1st Dist.). To prove trespass in a habitation when a person is present or likely to be present, the State only needed to prove beyond a reasonable doubt that Goralczyk by force, stealth, or deception trespassed in the home when the victim was present or likely to be present. The evidence regarding facts to support this conviction is clear. Goralczyk broke the glass in the door and forced his way into the victim's home.

The victim was present in the home at the time as shown by her testimony and the 911 recording. Given the evidence, we reverse Goralczyk's conviction for burglary in violation of R.C. 2911.12(A)(2) and remand this case for the trial court to vacate the prior entry finding Goralczyk guilty of burglary and to enter a finding of guilt for the lesser-included offense of trespass in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B), a felony of the fourth degree. The trial court will then sentence Goralczyk for that offense.

*Manifest Weight*

**{¶18}** Even if the evidence was deemed sufficient to support a finding that Goralczyk intended to commit one of the two identified predicate offenses, the question of whether it was supported by the manifest weight of the evidence would still need to be addressed.

> When reviewing a judgment to determine if it is against the manifest weight of the evidence, an appellate court "review[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." . . . A new trial should be granted only in the exceptional case in which the evidence weighs heavily against conviction. . . . Although the appellate court acts as a "thirteenth juror," due deference to the findings made by the fact-finder must still be given.

*State v. Hulbert*, 2021-Ohio-2298, ¶ 23 (3d Dist.) (internal citations removed).

Viewing the evidence in total, the jury clearly lost its way and created a manifest

miscarriage of justice as to the conviction for burglary pursuant to R.C. 2911.12(A)(2). As discussed above, the evidence did not show beyond a reasonable doubt that Goralczyk entered the residence and had the intent to commit one of the identified predicate criminal offenses. The evidence strongly supports the jury's determination that Goralczyk entered by force into the home of the victim while the victim was present. However, the evidence does not show beyond a reasonable doubt that Goralczyk had the intent to commit a criminal offense. As such, the jury's verdict finding Goralczyk guilty of burglary is not supported by the manifest weight of the evidence.

{¶19} Generally, the result of finding a conviction is not supported by the manifest weight of the evidence would be to remand the matter for a new trial. However, in this case, the evidence clearly supports a conviction for the lesser-included trespass in a habitation when a person is present or likely to be present. As a conviction for this offense is not against the manifest weight of the evidence, a new trial is not necessary. As set forth above, the matter will be remanded for the trial court to enter a judgment of conviction to indicate that Goralczyk was convicted of trespass in a habitation when a person is present or likely to be present, in violation of R.C. 2911.12(B), and for sentencing on that offense. For these reasons the assignment of error is sustained to the extent expressly stated.

{¶20} Having found error in the particulars assigned and argued, the judgment of the Court of Common Pleas of Crawford County is reversed and the matter is remanded for entry of the verdict of conviction and resentencing.

*Judgment Reversed*
*And Cause Remanded*

**WALDICK, P.J., concurs.**

**MILLER, J., concurs in Judgment Only**

Case No. 3-24-01

# __JUDGMENT ENTRY__

For the reasons stated in the opinion of this Court, the assignment of error is sustained and it is the judgment and order of this Court that the judgment of the trial court is reversed with costs assessed to Appellee for which judgment is hereby rendered.  The cause is hereby remanded to the trial court for further proceedings and for execution of the judgment for costs.

It is further ordered that the Clerk of this Court certify a copy of this Court's judgment entry and opinion to the trial court as the mandate prescribed by App.R. 27; and serve a copy of this Court's judgment entry and opinion on each party to the proceedings and note the date of service in the docket.  See App.R. 30.

John R. Willamowski, Judge

Juergen A. Waldick, Judge

Mark C. Miller, Judge
Concurs in Judgment Only

DATED:
/hls

-16-