[Cite as *State v. Smith*, 2021-Ohio-3404.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## MARION COUNTY

STATE OF OHIO,

     PLAINTIFF-APPELLEE,                    CASE NO.  9-20-50

     v.

SHANE A. SMITH,                        O P I N I O N

     DEFENDANT-APPELLANT.

Appeal from Marion County Common Pleas Court
Trial Court No. 2019 CR 0221

Judgment Affirmed

Date of Decision:   September 27, 2021

APPEARANCES:

    *William T. Cramer*  for Appellant

    *Nathan R. Heiser* for Appellee

Case No. 9-20-50

**MILLER, J.**

{¶1} Defendant-appellant, Shane A. Smith, appeals the December 21, 2020 judgment of sentence of the Marion County Court of Common Pleas. For the reasons that follow, we affirm.

## I. Facts and Procedural History

{¶2} On May 12, 2019, Benjamin Stevens and Katie Keller[1] left their home in Richland Township, Marion County, Ohio, to go to lunch. When Benjamin and Katie returned home, they noticed that the covers of their garage door opener keypads were flipped up. This struck Benjamin and Katie as odd because they did not regularly use the keypads to gain access to the garage. To determine who had meddled with the keypads, Benjamin and Katie decided to review a recording made by their video surveillance system.

{¶3} Benjamin and Katie zeroed in on surveillance footage captured earlier that morning shortly after 2:00 a.m. According to Benjamin, Katie, and a deputy sheriff who reviewed the recording,[2] the recording depicted a Chevrolet S-10 pickup truck pulling into Benjamin and Katie's driveway. A person exited the truck wearing a Cleveland Browns football helmet as well as a Cleveland Browns jacket. At points during the recording, the person was carrying a large stick. The person

---

[1] Benjamin and Katie have since married. Katie is now known as Katie Stevens.
[2] The full recording was not introduced or admitted as an exhibit at Smith's trial. While a 59-second snippet of the recording is part of the record, information about the recording is gleaned mostly from witness testimony.

-2-

then attempted to enter various structures on Benjamin and Katie's property. The person walked around Benjamin and Katie's house and tried to enter the attached garage by pushing upward on the garage door. Furthermore, the person attempted to enter a detached garage by entering codes into the garage door opener keypads. The recording reflected that the person also peered into the detached garage through a window and that the person tried to enter the detached garage by turning the doorknob of a locked side door. Benjamin and Katie called to report the incident to law enforcement officers. A deputy from the Marion County Sheriff's Office responded to their call, reviewed the surveillance footage with Benjamin and Katie, and took their statements.

{¶4} After the deputy left, Benjamin decided to drive around the area to see if he could locate the pickup truck depicted on the surveillance footage. Katie remained at home. Sometime after Benjamin left, Katie heard an unfamiliar male voice coming from the kitchen. Alarmed, Katie ran into her bedroom, locked the door, and called Benjamin to tell him that there was an intruder in their house. Katie then retreated farther, locking herself inside the master bathroom, and placed a call to 911.

{¶5} In response to Katie's phone call, Benjamin turned around and raced home. When Benjamin arrived home, he encountered a man in his driveway. The man was later identified as Smith. According to Benjamin, he recognized Smith

from an incident months earlier. During this earlier encounter, Benjamin had also confronted Smith in his driveway. Benjamin had asked Smith what he was doing in the driveway, and Smith had responded by saying that he thought Benjamin and Katie's house was for sale.

{¶6} Much as he did during their first meeting, Benjamin confronted Smith. Smith admitted to Benjamin that he had entered the house, but he stated that he did so only because he thought some of his family members lived there. However, Smith never specified which members of his family he believed resided there. Smith also seemed to acknowledge his earlier encounter with Benjamin.

{¶7} Deputies soon responded to Katie's 911 call. Upon arrival, they placed Smith under arrest and secured a backpack that Smith was carrying with him. Smith's backpack was found to contain only a few inexpensive items, such as a space blanket, a flashlight, and a permanent marker, and it did not appear to contain anything taken from any of the buildings on Benjamin and Katie's property. Benjamin and Katie confirmed that nothing appeared to be missing from their home.

{¶8} While in custody, Smith repeated his claim that he entered Benjamin and Katie's house because he believed some of his family lived there. He also told the deputies he had been forced out of his girlfriend's house, a fact later confirmed by Smith's girlfriend. Smith then volunteered to take the deputies to the location of his pickup truck. On the way to the pickup truck, Smith guided the deputies to the

place where he discarded a jacket earlier in the day. In a ditch approximately five miles from Benjamin and Katie's home, the deputies recovered a Cleveland Browns jacket. Smith then directed the deputies to the location of his truck, which was only a short distance away from where his jacket was collected. The deputies later searched Smith's pickup truck, a Chevrolet S-10, and found, among other things, an autographed Cleveland Browns football helmet and a large stick.

{¶9} On May 15, 2019, Smith was indicted on one count of attempted burglary in violation of R.C. 2923.02(A) and 2911.12(A)(2), a third-degree felony, and one count of burglary in violation of R.C. 2911.12(A)(1), a second-degree felony. On May 20, 2019, Smith appeared for arraignment and pleaded not guilty to the counts of the indictment.

{¶10} A jury trial commenced on November 17, 2020. On November 19, 2020, the jury found Smith guilty of the attempted-burglary charge. However, the jury found Smith not guilty of the burglary offense, instead finding him guilty of the lesser-included offense of trespass in a habitation when a person is present or likely to be present in violation of R.C. 2911.12(B), a fourth-degree felony.

{¶11} A sentencing hearing was held on December 18, 2020, at which the trial court sentenced Smith to 18 months in prison for his attempted-burglary conviction and 12 months in prison for his trespass-in-a-habitation conviction. The trial court ordered that Smith's sentences be served consecutively for an aggregate

term of 30 months in prison.  The trial court filed its judgment entry of sentence on December 21, 2020.

{¶12} On December 30, 2020, Smith timely filed a notice of appeal.  He raises two assignments of error for our review.

## II.  Assignments of Error

**1.    Appellant's due process rights were violated by a conviction on count one for attempted burglary that was not supported by sufficient evidence.**

**2.    The weight of the evidence does not support a conviction on count one for attempted burglary.**

## III.  Discussion

### A.  First Assignment of Error:  Is Smith's attempted-burglary conviction supported by sufficient evidence?

{¶13} In his first assignment of error, Smith argues his attempted-burglary conviction is not supported by sufficient evidence.[3]  Specifically, Smith contends the State did not present sufficient evidence that he intended to commit a theft offense inside of Benjamin and Katie's residence when he attempted to enter it in the early morning hours of May 12, 2019.

### i.  Standard for Sufficiency-of-the-Evidence Review

{¶14} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at

---

[3] Smith does not argue that his trespass-in-a-habitation conviction is supported by insufficient evidence or that it is against the manifest weight of the evidence.

trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus, *superseded by state constitutional amendment on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Consequently, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33.

### ii. Attempted Burglary

{¶15} R.C. 2923.02, Ohio's attempt statute, provides that "[n]o person, purposely or knowingly, and when purpose or knowledge is sufficient culpability for the commission of an offense, shall engage in conduct that, if successful, would constitute or result in the offense." R.C. 2923.02(A).

> Elaborating on the statutory language, the Supreme Court of Ohio has further defined "criminal attempt" as """"an act or omission constituting a substantial step in a course of conduct planned to culminate in [the actor's] commission of the crime."""" (Brackets sic.) *State v. Dean*, 146 Ohio St.3d 106, 2015-Ohio-4347, ¶ 175, quoting *State v. Group*, 98 Ohio St.3d 248, 2002-Ohio-7247, ¶ 101, quoting *State v. Woods*, 48 Ohio St.2d 127 (1976), paragraph one of the syllabus, *judgment vacated on other grounds*, 438 U.S. 910, 98 S.Ct.

3133 (1978). "To constitute a substantial step, the offender's conduct need not be the last proximate act prior to the commission of the offense * * *." *State v. Elahee*, 1st Dist. Hamilton No. C-160640, 2017-Ohio-7085, ¶ 16. Instead, a "substantial step" requires only "'conduct that is "strongly corroborative of the actor's criminal purpose."'" *Dean* at ¶ 175, quoting *Group* at ¶ 101, quoting *Woods* at paragraph one of the syllabus. "'Precisely what conduct will be held to be a substantial step must be determined by evaluating the facts and circumstances of each particular case.'" *State v. Miller*, 3d Dist. Seneca No. 13-12-52, 2013-Ohio-3194, ¶ 31, quoting *State v. Butler*, 5th Dist. Holmes No. 2012-CA7, 2012-Ohio-5030, ¶ 28, citing *Group* at ¶ 100.

*State v. Potter*, 3d Dist. Hancock No. 5-19-14, 2020-Ohio-431, ¶ 10.

{¶16} In this case, the criminal offense attempted by Smith was burglary in violation of R.C. 2911.12(A)(2). R.C. 2911.12(A)(2) provides that "[n]o person, by force, stealth, or deception, shall * * * [t]respass in an occupied structure or in a separately secured or separately occupied portion of an occupied structure that is a permanent * * * habitation of any person when any person other than an accomplice of the offender is present * * *, with purpose to commit in the habitation any criminal offense." Many of the words and phrases used in R.C. 2911.12(A)(2), such as "trespass" and "occupied structure," are particularly defined by statute. However, we need not review these specialized meanings because they are immaterial to our resolution of this case. Smith does not dispute that he attempted to forcibly gain access to Benjamin and Katie's residence during the early morning hours of May 12, 2019, while they were asleep inside. Consequently, Smith does

not contest that he attempted, by force,[4] to trespass in an occupied structure that is a permanent habitation when a person other than an accomplice was present. Instead, Smith contends his attempted-burglary conviction is not supported by sufficient evidence because the State failed to present evidence that he attempted to enter Benjamin and Katie's residence with purpose to commit a criminal offense, specifically a theft offense, therein.

{¶17} In the average case, "[t]o establish the 'any criminal offense' prong of the burglary statute, the State is required to show that the defendant 'invaded the dwelling for the purpose of committing a crime or that he formed that intent during the trespass.'" *State v. Hudson*, 2d Dist. Montgomery No. 27561, 2018-Ohio-423, ¶ 22, quoting *State v. Gardner*, 118 Ohio St.3d 420, 2008-Ohio-2787, ¶ 33, citing *State v. Fontes*, 87 Ohio St.3d 527 (2000), syllabus. "A person acts purposely when it is the person's specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is the offender's specific intention to

---

[4] In his appellate brief, Smith does maintain that he "made no attempt to force entry that night" and that the "[v]ideo showed [him] walking around the house carrying a stick, and yet no windows were broken and no doors were damaged." However, Smith makes these observations in an effort to negate the evidence suggesting that he attempted to enter Benjamin and Katie's residence with purpose to commit a theft offense; he does not separately argue that the State presented insufficient evidence to prove the "force" element of attempted burglary. Moreover, Smith is incorrect in asserting that he did not attempt to "force" entry. "Force" is defined as "any violence, compulsion, or constraint physically exerted by any means upon or against a person or thing." R.C. 2901.01(A)(1). "'Force' is satisfied by 'any effort physically exerted.'" *State v. Johnson*, 2d Dist. Montgomery No. 26961, 2017-Ohio-5498, ¶ 21, quoting *State v. Snyder*, 192 Ohio App.3d 55, 2011-Ohio-175, ¶ 18 (9th Dist.). In attempting to enter Benjamin and Katie's attached garage by placing his hands on the garage door and pushing upward, Smith applied "force" as that term is used in R.C. 2911.12.

engage in conduct of that nature." R.C. 2901.22(A). "'The purpose with which a person does an act is determined from the manner in which it is done, the means or weapon used, and all the other facts and circumstances in evidence.'" *Hudson* at ¶ 22, quoting *State v. Johnson*, 11th Dist. Lake No. 2006-L-259, 2007-Ohio-5783, ¶ 40.

### iii. Smith's attempted-burglary conviction is supported by sufficient evidence.

{¶18} Smith contends his attempted-burglary conviction is not supported by sufficient evidence because "there was no evidence that [he] ever took anything or even searched for anything of value that night" and because he "never even gained access to the house." Smith's argument has its appeal, but it is ultimately unpersuasive. As one court has observed, "it is difficult to ascertain the intent of a person in forcibly entering an occupied structure if he is apprehended before he commits any overt act inside the premises." *State v. Flowers*, 16 Ohio App.3d 313, 315 (10th Dist.1984), *overruled on other grounds*, *State v. Fontes*, 87 Ohio St.3d 527 (2000). This is equally true, if not more so, of a person who failed to forcibly enter an occupied structure despite having engaged in conduct strongly suggesting an intent to do so. In cases where a trespasser forcibly entered an occupied structure but did not commit any overt criminal acts inside of the structure before being detected, courts have concluded that, "unless circumstances giving rise to a different inference are present, a reasonable inference arises that the person entered the

structure with the intent to commit a theft offense." *State v. Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, ¶ 20 (4th Dist.), citing *Flowers* at 315 and *State v. Levingston*, 106 Ohio App.3d 433, 436 (2d Dist.1995). Although actual entry by a trespasser into an occupied structure is perhaps more strongly indicative of the trespasser's underlying criminal purpose, we see no reason why a similar inference cannot arise where an attempt to enter an occupied structure was ultimately unsuccessful. *See State v. Radloff*, 8th Dist. Cuyahoga No. 98182, 2013-Ohio-369, ¶ 16.

{¶19} Here, the very fact that Smith attempted to enter Benjamin and Katie's attached garage by forcing the overhead door up gives rise to the inference that Smith intended to enter the premises in order to commit a theft offense. The circumstances surrounding Smith's attempted entry, viewed in a light most favorable to the State, strengthen this inference. Under cover of darkness, Smith methodically tested various potential points of entry into the structures on Benjamin and Katie's property. *See State v. Plachko*, 8th Dist. Cuyahoga No. 91358, 2009-Ohio-1687, ¶ 15 (defendant's entry into garage under cover of darkness was one factor supporting the inference that defendant intended to commit a theft offense). Furthermore, while Smith's Cleveland Browns football helmet was a somewhat inapt and ridiculous disguise, it nevertheless operated to obscure his face from Benjamin and Katie's video surveillance system.

{¶20} Smith seems to suggest that the State's evidence supports an alternative reasonable inference that, consistent with his explanation for why he entered Benjamin and Katie's residence later in the afternoon, his early-morning attempt to enter the structures on Benjamin and Katie's property was motivated by his belief that his family lived there and by his need for a place to stay after moving out of his girlfriend's house. However, there is no indication in the record that Smith attempted to gain access to Benjamin and Katie's residence by any conventional means, such as knocking on the front door or ringing the doorbell. Instead, Smith came onto Benjamin and Katie's property in the dead of night, concealed his face, and attempted to enter the structures on the property in various ways, none of them legitimate. Thus, Smith's conduct cuts against any such innocent inference. *See State v. Chafin*, 2d Dist. Greene No. 2019-CA-69, 2020-Ohio-3983, ¶ 25 (concluding that "[t]here [could] be little doubt that [the defendant's] intent in entering the house was to steal something" partly because "[t]he record lack[ed] any evidence that [he] knocked on the front door and asked to come in, as any normal visitor (relative or not) would").

{¶21} We conclude that, viewing the evidence in a light most favorable to the State, any rational trier of fact could reasonably infer that Smith intended to commit a theft offense inside of Benjamin and Katie's residence on the morning of

May 12, 2019. Accordingly, we conclude that Smith's attempted-burglary conviction is supported by sufficient evidence.

{¶22} Smith's first assignment of error is overruled.

**B. Second Assignment of Error: Is Smith's attempted-burglary conviction against the manifest weight of the evidence?**

{¶23} In his second assignment of error, Smith argues his attempted-burglary conviction is against the manifest weight of the evidence. He contends that the "same evidentiary deficiencies noted [in his sufficiency-of-the-evidence argument] equally undermine the weight of the evidence" and that there is ample evidence counteracting any inference that he intended to commit a theft offense inside of Benjamin and Katie's residence on the morning of May 12, 2019.

**i. Standard for Manifest-Weight-of-the-Evidence Review**

{¶24} In determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[] the evidence and all reasonable inferences, consider[] the credibility of witnesses and determine[] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins*, 78 Ohio St.3d 380, 387 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses.

*State v. DeHass*, 10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

### ii. Smith's attempted-burglary conviction is not against the manifest weight of the evidence.

{¶25} Smith notes that after attempting to enter Benjamin and Katie's residence on the morning of May 12, 2019, he "left on his own rather than flee[ing] following a confrontation." He also notes that when he actually entered Benjamin and Katie's house that afternoon, "he did not take * * * or even disturb anything." Smith further observes that the evidence showed that "[w]hen confronted, [he] was polite and cooperative, made no attempt to flee, and provided a reasonable explanation for his presence which was independently confirmed by the police." Thus, Smith's manifest-weight argument essentially boils down to a contention that the jury lost its way by finding him guilty of attempted burglary because the evidence is more compatible with his explanation for being at Benjamin and Katie's property than it is with the inference that he intended to commit a theft offense.

{¶26} However, the fact that the jury chose to accept the theft-offense inference instead of Smith's explanation for his presence at Benjamin and Katie's property does not render Smith's attempted-burglary conviction against the weight

of the evidence. "Even when an accused offers an innocent explanation for his conduct, 'a jury is not required to accept a competing inference of innocence if it may infer guilt, beyond a reasonable doubt, from the same circumstances.'" *Morris*, 159 Ohio App.3d 775, 2005-Ohio-962, at ¶ 20, quoting *Levingston*, 106 Ohio App.3d at 437. Moreover, "a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version." *State v. Ferrell*, 10th Dist. Franklin No. 19AP-816, 2020-Ohio-6879, ¶ 59.

{¶27} The evidence supports the jury's decision to credit the theft-offense inference over Smith's explanation. For one, Smith's claim that he believed his family lived at Benjamin and Katie's house was severely undermined by Benjamin's testimony that Smith came to the house months earlier and had been made aware Benjamin and Katie lived there. Furthermore, it is notable that Smith never articulated which members of his family he believed lived at Benjamin and Katie's property. Finally, Smith's behavior on the morning of May 12, 2019, which was seriously at odds with the conduct one would expect of a person seeking shelter at the home of a family member, provides an additional basis for rejecting his explanation. Because the evidence does little to assuage the doubts concerning the veracity of Smith's explanation, we cannot conclude that the jury lost its way by

accepting the theft-offense inference. Consequently, we conclude that Smith's attempted-burglary conviction is not against the manifest weight of the evidence.

**{¶28}** Smith's second assignment of error is overruled.

## IV. Conclusion

**{¶29}** For the foregoing reasons, Smith's assignments of error are overruled. Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the Marion County Court of Common Pleas.

***Judgment Affirmed***

**WILLAMOWSKI, P.J. and SHAW, J., concur.**

**/jlr**