[Cite as *State v. Kreiter*, 2023-Ohio-324.]

COURT OF APPEALS
TUSCARAWAS COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | |
|---|---|
| STATE OF OHIO | JUDGES:<br>Hon. W. Scott Gwin, P.J. |
| Plaintiff-Appellee | Hon. William B. Hoffman, J.<br>Hon. Patricia A. Delaney, J. |
| -vs- | |
| | Case No. 2022 AP 04 0007 |
| JASON B. KREITER | |
| Defendant-Appellant | O P I N I O N |

CHARACTER OF PROCEEDINGS: Appeal from the Tuscarawas County Court of Common Pleas, Case No. 2021 CR 04 0113

JUDGMENT: Affirmed

DATE OF JUDGMENT ENTRY: February 1, 2023

APPEARANCES:

For Plaintiff-Appellee

RYAN STYER
Tuscarawas County Prosecutor

KRISTINE W. BEARD
Assistant Prosecuting Attorney
Tuscarawas County Prosecutors Office
125 E. High Avenue
New Philadelphia, Ohio 44663

For Defendant-Appellant

J. REID YODER
BENJAMIN R. SORBER
DiCaudo, Pitchford & Yoder, LLC
209 South Main Street, Third Floor
Akron, Ohio 44308

*Hoffman, J.*

**{¶1}** Defendant-appellant Jason B. Kreiter appeals the judgment entered by the Tuscarawas County Common Pleas Court convicting him of one count of gross sexual imposition (R.C. 2907.05(A)(4)) and one count of importuning (R.C. 2907.07(A)), and sentencing him to an aggregate prison term of forty-eight months. Plaintiff-appellee is the state of Ohio.

STATEMENT OF THE FACTS AND CASE

**{¶2}** The victim in the instant case is Appellant's stepdaughter, and resided with her mother and Appellant first in Minerva, and later in New Philadelphia. When her mother was working, the victim often was home alone with Appellant.

**{¶3}** When the victim was in fifth grade, she and Appellant were packing up their items from the Minerva house to move to New Philadelphia. Appellant was laying on the stairs in the Minerva house wearing basketball shorts. The victim was complaining about Appellant not helping her with the packing and moving. Appellant took her phone away from her as punishment for complaining, but told her she could get her phone back by touching his penis. He showed the victim how to make her hand into the shape of an "O," and move her hand up and down on his penis until he ejaculated.

**{¶4}** The pattern of Appellant taking the victim's phone away from her as punishment, but allowing her to have it back early by rubbing his penis occurred numerous times after the family moved to New Philadelphia. After he finished, the victim would have to get a paper towel or a rag for Appellant to clean up. On one occasion, Appellant asked the victim to use her mouth on his penis, but she said no. Instead, he made the victim suck on his thumb while touching his penis.

{¶5}    Initially the victim did not tell anyone because she didn't realize what was happening was wrong, and Appellant told her not to tell anyone, especially not her mom. The victim eventually told a friend, and her friend told her aunt.  The friend's aunt reported the conduct to the police.

{¶6}    The victim's mother did not believe the victim at first, and both Appellant and her mother tried to convince the victim nothing had happened.  The victim initially allowed them to believe nothing happened so things would go back to normal.   The victim was tired of seeing her mother hurt.  However, after a vacation to Florida, the victim's mother took her to Lighthouse Family Center for evaluation.

{¶7}    Evaluation of the victim at Lighthouse was conducted by Carrie Schnirring. Schnirring believed the victim recanted her story because of the lack of support from her mother.  Schnirring found Appellant engaged in significant grooming of the victim, telling her if she loved him, she would do the things he asked.  He made the victim feel accountable by having her perform the sexual acts to get her phone back.  He also engaged in hugging and tickling behavior and encouraged the victim to sit on his lap in order to desensitize the victim to the abnormal touching.  Schnirring noted the victim was able to provide contextual details concerning the sexual behavior, and was consistent across the evaluation assessment with her prior disclosures of touching.  Schnirring diagnosed the victim with post-traumatic stress disorder, and recommended she be enrolled in trauma therapy to address the likelihood she was sexually abused.

{¶8}    Appellant was indicted by the Tuscarawas County Grand Jury with one count of attempted rape, one count of gross sexual imposition, and one count of

importuning.  The case proceeded to jury trial in the Tuscarawas County Common Pleas Court.

**{¶9}**    Appellant testified at trial, denying any sexual behavior with the victim.  He testified the victim was hypersexualized, and obsessed with adult sexual activity.  He claimed the stairwell in the Minerva house was too small for the conduct described by the victim because he is a large man.  He testified the claims of the victim were the product of her imagination.

**{¶10}**  The jury could not reach a verdict on the charge of attempted rape, and the State dismissed the charge prior to sentencing. The jury found Appellant guilty of gross sexual imposition and importuning.  The trial court sentenced Appellant to forty-eight months incarceration for gross sexual imposition and twenty-four months incarceration for importuning, to be served concurrently for an aggregate term of forty-eight months incarceration.   It is from the March 23, 2022 judgment of the trial court Appellant prosecutes his appeal, assigning as error:

I. MR. KREITER'S CONVICTION IS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE.

II. THE TRIAL COURT ABUSED ITS DISCRETION IN SENTENCING MR. KREITER TO SERVE A TERM OF FORTY-EIGHT MONTHS.

I.

**{¶11}** In his first assignment of error, Appellant argues his convictions are against the manifest weight of the evidence. Specifically, he argues the victim had previously recanted her claims of misconduct, the physical evidence did not support the victim's testimony concerning the incident on the staircase at the Minerva house due to Appellant's size, Schnirring admitted the victim did not display signs of post-traumatic stress disorder, and none of the witnesses observed Appellant behaving in an inappropriate manner.

**{¶12}** In determining whether a verdict is against the manifest weight of the evidence, the appellate court acts as a thirteenth juror and "in reviewing the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses, and determines whether in resolving conflicts in evidence the jury 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins,* 78 Ohio St. 3d 380, 387, 1997-Ohio-52, 678 N.E.2d 541, *quoting State v. Martin*, 20 Ohio App. 3d 172, 175, 485 N.E.2d 717 (1983).

**{¶13}** Appellant was convicted of gross sexual imposition in violation of R.C. 2907.05(A)(4):

> (A) No person shall have sexual contact with another, not the spouse
> of the offender; cause another, not the spouse of the offender, to have
> sexual contact with the offender; or cause two or more other persons to
> have sexual contact when any of the following applies:

(4) The other person, or one of the other persons, is less than thirteen

years of age, whether or not the offender knows the age of that person.

**{¶14}** Appellant was also convicted of importuning in violation of R.C. 2907.07(A):

(A) No person shall solicit a person who is less than thirteen years of

age to engage in sexual activity with the offender, whether or not the

offender knows the age of such person.

**{¶15}** Appellant argues the judgment is against the manifest weight of the evidence because the victim had earlier recanted her statements, claiming to her mother and Appellant nothing had happened. He argues her testimony contained facts she did not include in her prior statements, and therefore the jury lost its way in believing her testimony and finding him guilty.

**{¶16}** In support of his argument, he cites *In re Z.B.,* 9th Dist. Medina No. 09CA0039-M, 2010-Ohio-1345. *Z.B.* involved two high school students of the same age, neither of whom denied the sexual behavior occurred. The only issue was whether the victim consented. The court found the victim's testimony contained numerous discrepancies and was simply not believable. The *Z.B.* court held:

This Court acknowledges that a manifest weight challenge presents

an appellate court with a narrow window of review, given the fact that the

trier of fact is in the best position to determine the credibility of the

witnesses. Yet, when faced with a case such as this, where the only witnesses to an alleged sexual attack were the victim and the accused, and the victim's credibility stands alone as the linchpin of the State's case, this Court cannot ignore its duty to sit as the "thirteenth juror" and review the evidence with a critical eye. *Thompkins*, 78 Ohio St.3d at 387, 678 N.E.2d 541. When viewed in its entirety, we cannot agree that the State presented the greater amount of credible evidence in this case. In weighing the evidence and all reasonable inferences, we conclude that, "in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the [adjudication of delinquency] must be reversed and a new trial ordered." *Otten*, 33 Ohio App.3d at 340, 515 N.E.2d 1009. J.J.'s testimony contained numerous discrepancies and was simply, at times, not believable. In addition, her testimony was consistently impeached with evidence other than Z.B.'s own testimony. Because the only issue in this case was consent, it was critical to the State's case that J.J. provide credible testimony. Because she did not do so, Z.B.'s argument that his adjudication of delinquency is against the manifest weight of the evidence has merit. To the extent that Z.B.'s assignment of error presents a manifest weight challenge, it is sustained.

**{¶17}** *Id.* at ¶24.

**{¶18}** We find in the instant case the jury did not lose its way in believing the trial testimony of the victim. As this court has recently held:

This case came down to the credibility of the State's witnesses and Strader's witnesses. "When there is a conflict in the testimony of witnesses, it is for the trier of fact to determine the weight and credibility to be given to such evidence." *State v. York*, 3rd Dist. Union No. 14-21-14, 2022-Ohio-1626, 2022 WL 1538021, ¶ 87 quoting *State v. Robinson*, 12th Dist. Butler No. CA2018-08-163, 2019-Ohio-3144, ¶ 29. The jury may "take note of any inconsistencies in the testimony and resolve them accordingly, believing all, part, or none of each witness's testimony." *State v. Lark*, 12th Dist. Fayette No. CA2018-03-004, 2018-Ohio-4940, ¶ 29. Ultimately, " 'a conviction is not against the manifest weight of the evidence because the trier of fact believed the state's version of events over the defendant's version.' " *State v. Smith*, 3rd Dist. Marion No. 9-20-50, 2021-Ohio-3404, ¶ 26, quoting *State v. Ferrell*, 10th Dist. Franklin No. 19AP-816, 165 N.E.3d 743, 2020-Ohio-6879, ¶ 59.

**{¶19}** *State v. Strader*, 5th Dist. Stark No. 2021CA00152, 2022-Ohio-4470, ¶ 77.

**{¶20}** Unlike *Z.B., supra,* in the instant case the victim and the defendant were not the same age, and consent was not an issue due to the victim's young age. The defendant held a position of trust and authority over the victim as her stepfather. The victim admitted she had previously recanted her story and was initially reluctant to speak about the incidents. However, the victim explained initially her mom did not believe her, and so she recanted the story so things would go back to normal in her home.

**{¶21}** Further, the mere fact the victim remembered additional facts about the incidents at trial, such as being asked to spit on her hand before touching Appellant's penis, does not render the judgment against the manifest weight of the evidence. When specifically asked why in the six to seven times she had previously talked about the incident she had never once said she spit on her hand, the victim testified, "No, I was not asked a question that was even close to it. The longer I talk about this the more I remember some of it. I tried to block it out for years." Tr. 163.

**{¶22}** Appellant also argues Schnirring's testimony the victim did not display signs of post-traumatic stress disorder suggests the victim is lying about the incidents of sexual abuse. We find Appellant has mischaracterized Ms. Schnirring's testimony. Schnirring testified on direct examination the victim suffers from post-traumatic stress syndrome, likely caused by sexual abuse. On cross-examination, counsel for Appellant recited a list of physical and emotional factors which are symptomatic of post-traumatic stress disorder, implying the victim did not appear to exhibit any of these symptoms. Ms. Schnirring responded:

> A. I would disagree with you on that and if you'd like I can let you know exactly what symptoms that she exhibited that corresponded with post-traumatic stress disorder.
>
> Q. Please do.
>
> A. Based on the testing that I did with her and her mother, and also based on what I observed during my evaluation, it was reported to me that she was struggling with irritability, that she was upset when asked to talk

about or think about past events. And I observed that during my sessions. That she blames herself for negative experiences from the past. That she prefers to avoid people or places that remind her of past events because these tend to be memory triggers for her. And then her mother also reported to me interest in, oh I'm sorry this is still [the victim]. [The victim] also reported to me interest in avoiding Jason specifically and her home in New Philly because of the traumatic memories it triggered.

Q. Okay. So—

A. Her mother also reported to me some of those same PTSD symptoms as well.

Q. All right. You were talking very quickly and I want to make sure that I get them all down. But you said irritability, she blames herself, she prefers to avoid people, and that she, her mom told you that she wanted to avoid Jason?

A. No, no. If I could correct you.

Q. Yes please.

A. Irritability and then she feels upset when asked to talk about or think about the past events. That was reported to me and I also observed it during my sessions, that she blames herself for negative experiences from the past. That she prefers to avoid people or places that remind her of the past events. And then [the victim] elaborated that what she really prefers to avoid would be Jason and the home in New Philly.

**{¶23}** Tr. 355-56.

**{¶24}** The jury was not required to believe Schnirring's findings regarding PTSD in order to find Appellant guilty.  However, to the extent the jury relied on Schnirring's expert testimony in this case, we find the jury did not lose its way.

**{¶25}** Finally, Appellant argues the jury ignored the physical evidence he was too large for the incident on the staircase to have taken place, and argues his witnesses all testified they had observed no improper behavior between Appellant and the victim.  Once again, the jury is free to believe or disbelieve any witness's testimony, and the jury was therefore free to disbelieve Appellant's testimony he did not physically fit in the stairwell of the Minerva home.  The mere fact Appellant's witnesses did not observe any inappropriate conduct between Appellant is not conclusive of whether such events happened, as the victim never claimed the incidents were observed by others.  We find the jury did not lose its way in disbelieving Appellant's testimony and the testimony of his witnesses, and the judgment convicting Appellant of gross sexual imposition and importuning is not against the manifest weight of the evidence.

**{¶26}** The first assignment of error is overruled.

II.

**{¶27}** In his second assignment of error, Appellant argues the trial court abused its discretion in sentencing him to a prison term instead of to community control.

**{¶28}** We review felony sentences using the standard of review set forth in R.C. 2953.08. *State v. Roberts,* 5th Dist. Licking No. 2020 CA 0030, 2020-Ohio-6722, ¶13, *citing State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231. R.C. 2953.08(G)(2) provides we may either increase, reduce, modify, or vacate a sentence

and remand for sentencing where we clearly and convincingly find either the record does not support the sentencing court's findings under R.C. 2929.13(B) or (D), 2929.14(B)(2)(e) or (C)(4), or 2929.20(I), or the sentence is otherwise contrary to law. *Id., citing State v. Bonnell,* 140 Ohio St.3d 209, 2014-Ohio-3177, 16 N.E.3d 659.

**{¶29}** When sentencing a defendant, the trial court must consider the purposes and principles of felony sentencing set forth in R.C. 2929.11 and the seriousness and recidivism factors in R.C. 2929.12. *State v. Hodges*, 8th Dist. Cuyahoga No. 99511, 2013-Ohio-5025, ¶ 7.

**{¶30}** "The overriding purposes of felony sentencing are to protect the public from future crime by the offender and others, to punish the offender, and to promote the effective rehabilitation of the offender using the minimum sanctions that the court determines accomplish those purposes without imposing an unnecessary burden on state or local government resources." R.C. 2929.11(A). To achieve these purposes, the sentencing court shall consider the need for incapacitating the offender, deterring the offender and others from future crime, rehabilitating the offender, and making restitution to the victim of the offense, the public, or both. *Id.* Further, the sentence imposed shall be "commensurate with and not demeaning to the seriousness of the offender's conduct and its impact on the victim, and consistent with sentences imposed for similar crimes by similar offenders." R.C. 2929.11(B).

**{¶31}** R.C. 2929.12 lists general factors which must be considered by the trial court in determining the sentence to be imposed for a felony, and gives detailed criteria which do not control the court's discretion, but which must be considered for or against severity or leniency in a particular case. The trial court retains discretion to determine the

most effective way to comply with the purpose and principles of sentencing as set forth in R.C. 2929.11. R.C. 2929.12.

**{¶32}** Nothing in R.C. 2953.08(G)(2) permits this Court to independently weigh the evidence in the record and substitute our own judgment for that of the trial court to determine a sentence which best reflects compliance with R.C. 2929.11 and R.C. 2929.12. *State v. Jones*, 1163 Ohio St.3d 242, 69 N.E.3d 649, 2020-Ohio-6729, ¶ 42. Instead, we may only determine if the sentence is contrary to law.

**{¶33}** A sentence is not clearly and convincingly contrary to law where the trial court "considers the principles and purposes of R.C. 2929.11, as well as the factors listed in R.C. 2929.12, properly imposes post release control, and sentences the defendant within the permissible statutory range." *State v. Pettorini*, 5th Dist. Licking No. 2020 CA 00057, 2021-Ohio-1512, 2021 WL 1714216, ¶¶ 14-16 quoting *State v. Dinka*, 12th Dist. Warren Nos. CA2019-03-022 & CA2019-03-026, 2019-Ohio-4209, ¶ 36.

**{¶34}** In the instant case, the trial court sentenced Appellant within the statutory range and specifically considered the principles and purposes of sentencing set forth in R.C. 2929.11, as well as the factors listed in R.C. 2929.12. The trial court particularly took note of the position of trust Appellant held in relation to the juvenile victim, as well as his criminal record as both a juvenile and as an adult. We find the sentence is not clearly and convincingly contrary to law.

{¶35} The second assignment of error is overruled.   The judgment of the Tuscarawas County Common Pleas Court is affirmed.

By: Hoffman, J.

Gwin, P.J.  and

Delaney, J. concur