[Cite as *State v. Jennings*, 2022-Ohio-2892.]

# IN THE COURT OF APPEALS OF OHIO
# SECOND APPELLATE DISTRICT
# MONTGOMERY COUNTY

|  |  |  |
|---|---|---|
| STATE OF OHIO | : | |
| | : | |
| Plaintiff-Appellee | : | Appellate Case No. 29360 |
| | : | |
| v. | : | Trial Court Case No. CRB2002397 |
| | : | |
| DUSTIN JENNINGS | : | (Criminal Appeal from Municipal Court) |
| | : | |
| Defendant-Appellant | : | |
| | : | |

. . . . . . . . . . .

# O P I N I O N

Rendered on the 19th day of August, 2022.

. . . . . . . . . . .

ERIK R. BLAINE, Atty. Reg. No. 0080726, Assistant Prosecuting Attorney, City of Vandalia Prosecutor's Office, 245 James E. Bohanan Memorial Drive, Vandalia, Ohio 45377
        Attorney for Plaintiff-Appellee

STEVEN H. ECKSTEIN, Atty. Reg. No. 0037253, 1208 Bramble Avenue, Washington Court House, Ohio 43160
        Attorney for Defendant-Appellant

. . . . . . . . . . . . .

WELBAUM, J.

**{¶ 1}** Defendant-appellant, Dustin Jennings, appeals from his convictions in the Vandalia Municipal Court after a bench trial; he was found guilty of one count of cruelty against a companion animal and one count of depriving a companion animal of necessary sustenance. In support of his appeal, Jennings contends that both of his convictions were against the manifest weight of the evidence. For the reasons outlined below, the judgment of the trial court will be affirmed.

**Facts and Course of Proceedings**

**{¶ 2}** On December 1, 2020, Jennings was charged by complaint with one count of cruelty against a companion animal in violation of R.C. 959.131(D)(1) and one count of depriving a companion animal of necessary sustenance in violation of R.C. 959.131(D)(2), both misdemeanors of the second degree. The charges concerned an eight-year-old, female pit bull mix named Reba, who was at all relevant times in Jennings's care. Jennings pled not guilty to both of the charges, and the matter proceeded to a bench trial.

**{¶ 3}** At trial, the State presented testimony from Officer Brian Baker of the Montgomery County Animal Resource Center ("MCARC"). The State also presented testimony from Dr. Jennifer Kotouch, a veterinarian who examined Reba at the MCARC. Jennings also testified in his defense. The following is a summary of all the testimony and evidence that was presented at trial.

*Officer Brian Baker*

**{¶ 4}** Officer Baker is an investigating officer at the MCARC.   Officer Baker testified that on the night of October 28, 2020, he was on call at his residence when a Vandalia police officer contacted him regarding a dog that had been running loose behind a gas station for a long period of time.   Officer Baker explained that a concerned citizen had called the police about the dog because the citizen was afraid to return the dog to its owner due to the dog being so emaciated.   Officer Baker testified that he told the police officer that he could not pick up the dog that night because of COVID restrictions and due to the status of the MCARC kennel.   Officer Baker testified that the police officer was able to take the dog to an organization called "Adopt-A-Pit," which kept the dog for the night and then brought it to the MCARC the next day for impoundment.

**{¶ 5}** Once the dog was impounded at the MCARC, Officer Baker was asked to investigate the matter so as to determine why the dog was so thin and why she had lesions on her body.   In proceeding with the investigation, Officer Baker testified that he researched and made contact with the registered owners of the dog, Jennings and Jennings's ex-girlfriend, Chastity Jones.   Officer Baker testified that on November 2, 2020, he made in-person contact with Jennings at Jennings's residence on Helke Road in Vandalia.   During that meeting, Officer Baker showed Jennings a picture of the dog that was found at the gas station; Jennings identified the dog as his pet, Reba.   Officer Baker testified that he also contacted Jones, who advised him that Reba had not been in her care for several months and that Reba had been healthy when Jones last saw her two or three months earlier.

{¶ 6} Continuing, Officer Baker testified that during his meeting with Jennings, Jennings told him that he did not know why Reba was "skinny." Officer Baker also testified that Jennings had another dog at his house, a miniature Australian Shepherd named Harley, who appeared to be a healthy weight. While discussing Reba, Officer Baker testified that Jennings showed him the two types of dog food that he fed Reba. Officer Baker testified that Jennings told him that Reba would not gain weight and that on October 10, 2020, he had had a friend named Anthony Depew take Reba to the Northridge Animal Clinic ("Northridge") to be examined.

{¶ 7} In light of this information, Officer Baker asked Jennings to supply him with paperwork verifying Reba's visit to Northridge. In response, Jennings told Officer Baker that he would retrieve the paperwork from Northridge and bring it to the MCARC shelter. Officer Baker testified that he advised Jennings that it was imperative for him to provide the paperwork so it could be established that Jennings was trying to address Reba's emaciated condition. Officer Baker also advised Jennings that the failure to provide the paperwork would result in charges being filed against him.

{¶ 8} Despite this warning, Officer Baker testified that Jennings never provided him with the paperwork from Northridge. Officer Baker also testified that Jennings failed to return his follow-up telephone calls and would not answer the door to his residence when Officer Baker returned to ask about the paperwork. Officer Baker contacted Northridge and discovered that Northridge had no record of Reba's ever being a patient there. Therefore, Officer Baker testified that because Jennings failed to show due diligence in caring for Reba, he filed charges against Jennings for cruelty to a companion animal and

neglect of a companion animal.

*Dr. Jennifer Kotouch*

**{¶ 9}** Dr. Kotouch is a veterinarian who works with the MCARC. Dr. Kotouch testified that on October 29, 2020, she conducted a forensic examination of a pit-bull mix named Reba for possible cruelty. Dr. Kotouch testified that, at the time of the examination, Reba was 8 years old and underweight. On a weight scale of one to nine, with one being emaciated and nine being morbidly obese, Dr. Kotouch testified that Reba's weight was at a 1.5. Dr. Kotouch explained that Reba was extremely thin and that being that thin can cause organ failure.

**{¶ 10}** Dr. Kotouch testified to preparing a written report of her examination of Reba, which was admitted into evidence as State's Exhibit 1. The report indicated that Reba weighed 38 pounds at the time of the exam and that Reba's recommended weight was between 48 and 50 pounds. Dr. Kotouch also testified to taking pictures of Reba, which were admitted into evidence as State's Exhibit 2. The pictures depicted several different views of Reba's body, including her back, which showed that Reba had a severely narrow, skeletal frame with her ribcage clearly in view.

**{¶ 11}** On cross-examination, Dr. Kotouch testified that Reba had been previously treated at the MCARC for heartworm in the summer of 2020 and that Reba's weight had been acceptable at that time. Dr. Kotouch also testified that during the prior visits to the MCARC, Reba presented with other medical conditions, including a broken tooth, a heart murmur secondary to heartworm, and arthritis as a result of a knee injury that was in the

process of healing. Dr. Kotouch testified that those preexisting conditions could potentially affect a dog's appetite, but explained that it was "[m]uch, much, much less likely" that those conditions were the cause of Reba's emaciation. Trial Tr. p. 28. Specifically, Dr. Kotouch testified that Reba no longer had heartworm when she examined her for abuse in October 2020 and that Reba ate well and gained weight after she was in the care of the MCARC. The notes included with Dr. Kotouch's examination report indicated that, during the exam for abuse, Reba "ate very eagerly during exam and took treats well," and that Reba "definitely ha[d] an appetite." State's Ex. 1, Medical History p. 4-5. The notes further indicated that while in the MCARC's care, Reba gained seven pounds in two weeks. *Id.* at p. 1-2.

{¶ 12} In addition to Reba's emaciated condition, Dr. Kotouch's pictures depicted lesions on Reba's tail, legs, and paws. Dr. Kotouch testified that the lesions were likely from Reba's being kept on a hard surface for an extended period of time. The medical history included in State's Exhibit 1 indicated that the lesions had not been present when the MCARC treated Reba for heartworm in the summer of 2020. The notes from June 15 and 16, 2020, indicated that Reba's skin had a "mild erythema over [left] side of dorsum, no alopecia/other lesions." State's Ex. 1, Medical History, p. 7-9. However, after Reba was impounded and examined for abuse in October 2020, it was noted that Reba's skin had "sore lateral aspect of 4th digit on [left] front foot; sores lateral and medical aspects of both hocks, alopecia/happy tail distal tail tip (not actively bleeding during exam)." *Id.* at p. 5.

*Dustin Jennings*

{¶ 13} Jennings testified that he and his ex-girlfriend, Jones, had adopted Reba in December 2019. Jennings did not dispute that Reba was in his care during the time period in question, as he testified that he and Jones had separated in April 2020 and that Jones had moved into an apartment complex that did not permit pets. Jennings testified that Reba had always been skinny and that the lesions on her body had been present when he and Jones adopted her. Jennings testified that at the time of Reba's adoption, he was told that the lesions were possibly scars from prior abuse.

{¶ 14} Jennings testified that Reba had been loose for three or four days before she was impounded at the MCARC in October 2020. Jennings testified that Reba had escaped two other times as well but was loose for no more than six hours on those occasions. Jennings claimed that Reba usually slept on his couch, recliner, or bed, and that she rarely slept on the floor.

{¶ 15} Jennings testified that he could not get the Northridge records for Officer Baker because Northridge would only release them to Depew. According to Jennings, Depew kept giving him excuses as to why he could not get the records, which led to his and Depew having a falling out. Jennings testified that he took Reba to another veterinary clinic on "North Dixie" three or four times. Jennings, however, could not account for any visits to that clinic during the time period in question. Jennings could only account for visits between January and May 2020.

{¶ 16} Jennings testified that, in an effort to get Reba to gain weight, he fed Reba table scraps and more dog food than was recommended. Jennings also testified to

feeding Reba dietary supplements for her arthritis. Jennings testified that Reba did not gain wait despite eating what he fed her. Jennings testified that there was no possibility that his other dog, Harley, was eating Reba's food, as Jennings explained that he fed Reba separately in her cage and that Reba would "scar[f] down her food" by the time he fed Harley. Trial Tr. p. 62.

*Dr. Kotouch Recalled to Testify*

{¶ 17} Following Jennings's testimony, the trial court recalled Dr. Kotouch to the witness stand and asked, based on her experience, whether it was reasonable to expect Reba to be as thin as she was if she was being fed all the time and fed in excess of what was recommended. In response, Dr. Kotouch indicated that if Reba had been properly fed, she would have been a reasonable weight and not in the emaciated condition she was in when impounded.

*Verdict and Sentence*

{¶ 18} The trial court took the matter under advisement and then found Jennings guilty as charged in the complaint. For the count of cruelty against a companion animal, the trial court sentenced Jennings to 90 days in jail with 80 days suspended and probation. The trial court also ordered Jennings to pay court costs, a $250 fine, and restitution to the MCARC in the amount of $255. The trial court further ordered Jennings to attend a one-day animal cruelty class and to have no companion animals for five years, with the exception of his current dog Harley. For the count of depriving a companion

animal of necessary sustenance, the trial court sentenced Jennings to 90 days in jail with 80 days suspended and ordered that sentence to be served concurrently with his other jail term.

{¶ 19} Jennings now appeals from both of his convictions, raising a single assignment of error for review.


**Assignment of Error**

{¶ 20} Under his sole assignment of error, Jennings contends that his convictions for cruelty against a companion animal and depriving a companion animal of necessary sustenance were against the manifest weight of the evidence. We disagree.

{¶ 21} "A weight of the evidence argument challenges the believability of the evidence and asks which of the competing inferences suggested by the evidence is more believable or persuasive." (Citation omitted.) *State v. Wilson*, 2d Dist. Montgomery No. 22581, 2009-Ohio-525, ¶ 12. When evaluating whether a conviction is against the manifest weight of the evidence, the appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact " 'clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.' " *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541 (1997), quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist.1983).

{¶ 22} A judgment of conviction should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin* at 175. "The fact that

the evidence is subject to different interpretations does not render the conviction against the manifest weight of the evidence." *State v. Adams*, 2d Dist. Greene Nos. 2013-CA-61, 2013-CA-62, 2014-Ohio-3432, ¶ 24, citing *Wilson* at ¶14. "The decision whether, and to what extent, to credit the testimony of particular witnesses is within the peculiar competence of the factfinder, who has seen and heard the witness." *State v. Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, *4 (Aug. 22, 1997). Therefore, this court will not substitute its judgment for that of the trier of fact on the issue of witness credibility unless it is patently apparent that the trier of fact lost its way in arriving at its verdict. *Wilson* at ¶ 17.

{¶ 23} As previously discussed, Jennings was convicted of cruelty against a companion animal in violation of R.C. 959.131(D)(1), which provides that: "No person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [t]orture, torment, or commit an act of cruelty against the companion animal[.]" The terms "cruelty," "torment," and "torture" include "every act, omission, or neglect by which unnecessary or unjustifiable pain or suffering is caused, permitted, or allowed to continue, when there is a reasonable remedy or relief[.]" R.C. 959.131(A)(2) and R.C. 1717.01(B). Jennings was also convicted of depriving a companion animal of necessary sustenance in violation of R.C. 959.131(D)(2), which provides that: "No person who confines or who is the custodian or caretaker of a companion animal shall negligently * * * [d]eprive the companion animal of necessary sustenance * * * [.]"

{¶ 24} In support of his appeal, Jennings is not challenging the sufficiency of the evidence that was used to convict him of the aforementioned offenses. Indeed, when

viewing the testimony and evidence in a light most favorable to the prosecution, it sufficiently established that in the fall of 2020, Jennings neglected to take Reba, his companion animal, for medical treatment despite her being severely emaciated and having sores on her legs, tail, and paws. The evidence also established that Reba's emaciated condition quickly improved after she was treated at the MCARC and removed from Jennings's care. Dr. Kotouch's testimony that Reba would not have been as thin as she was if properly fed was also sufficient to establish that Jennings was depriving Reba of necessary sustenance.

{¶ 25} Jennings, however, contends that his convictions were against the manifest weight of the evidence because the trial court erroneously chose to believe Dr. Kotouch's testimony over his. This argument lacks merit, as it is well established that " '[a] verdict is not against the manifest weight of the evidence [simply] because the finder of fact chose to believe the State's witnesses rather than the defendant's version of the events.' " *State v. McCary*, 2d Dist. Montgomery No. 28250, 2019-Ohio-4596, ¶ 33, quoting *State v. Oswald*, 9th Dist. Summit No. 28633, 2018-Ohio-245, ¶ 25. (Other citations omitted.) "[I]n a bench trial, 'the trial judge is best able to view the witnesses and observe their demeanor, gestures and voice inflections, and use these observations in weighing the credibility of the proffered testimony.' " *Emswiler v. Bodey*, 2d Dist. Champaign No. 2012-CA-3, 2012-Ohio-5533, ¶ 44, quoting *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984). *Accord State v. Myers*, 2d Dist. Darke No. 2019-CA-22, 2020-Ohio-4325, ¶ 23. Therefore, "we defer to trial court decisions on credibility issues, as those courts are in the best position to make that determination." *Myers* at

¶ 23, citing *Lawson*, 2d Dist. Montgomery No. 16288, 1997 WL 476684, at *4.

**{¶ 26}** Upon review, we find that the trial court's decision to rely on Dr. Kotouch's testimony over Jennings's testimony was sound and did not create a manifest miscarriage of justice. We also find that the evidence did not weigh heavily against finding Jennings guilty of cruelty against a companion animal and depriving a companion animal of necessary sustenance. Therefore, Jennings's convictions for those offenses were not against the manifest weight of the evidence.

**{¶ 27}** Jennings's assignment of error is overruled.

## Conclusion

**{¶ 28}** Having overruled Jennings's sole assignment of error, the judgment of the trial court is affirmed.

. . . . . . . . . . . . .

DONOVAN, J. and LEWIS, J., concur.

Copies sent to:

Erik R. Blaine
Steven H. Eckstein
Hon. Robert Edward Messham, Jr., Visiting Judge